IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.4:13-cv-02906 |
| | § | |
| FX NETWORKS, LLC, TWENTIETH | § | |
| CENTURY FOX FILM CORPORATION, | § | |
| TWENTY-FIRST CENTURY FOX, INC., | § | |
| and FXX NETWORKS, LLC, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS COUNT V OF PLAINTIFF'S AMENDED COMPLAINT

---

Plaintiff Exxon Mobil Corporation ("Plaintiff" or "ExxonMobil") opposes Defendants' FX Networks, LLC, Twentieth Century Fox Film Corporation, Twenty-First Century Fox, Inc., and FXX Networks, LLC (referred to collectively as "Defendants") Motion to Dismiss ("Defendants' Motion") under Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Defendants' unprecedented interpretation of the Lanham Act's state dilution bar is wrong.  Section 43(c)(6) of the Lanham Act states that the "ownership by a person of a valid registration . . . on the principal register under this chapter shall

be a complete bar to an action against that person, *with respect to that mark* . . . ." 15 U.S.C. § 1125(c)(6) (emphasis added). Defendants do not own federal registrations for the stylized interlocking X marks at issue here,[1] so ExxonMobil's state dilution claim is not barred.

Defendants ignore the provision that limits the state dilution bar to "that mark" registered, attempting to extend the bar to state dilution claims involving their *unregistered* FIX designs. Defendants fail to cite a single case applying the statute in this unprecedented manner, and ExxonMobil is not aware of any such case. This is unsurprising, as Defendants' approach contradicts the plain meaning of the statute and its underlying policies, and would lead to absurd and illogical results. Because the unregistered FIX designs at issue in this case are not "that mark," Section 43(c)(6) does not apply.

## II.    LEGAL STANDARD

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To

---

[1] This case involves Defendants' interlocking X marks, including the FXX Logo and all other marks that contain an interlocking X design and that are used by Defendants in connection with the FXX Network. ExxonMobil refers to these devices as the "FIX designs." *See also* Pltf's Am. Complaint, paras. 22-32 (Docket Entry No. 15).

withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly.* The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal,* 556 U.S. at 679.

### III. ARGUMENT

**1. The plain meaning of Section 43(c)(6) applies the state dilution bar only to the mark as registered, not unregistered variations**

Defendants' interpretation of the Lanham Act's provision establishing a state dilution bar is wrong and unprecedented. The plain text of Section 43(c)(6) is clear regarding the applicability of the statutory bar to state dilution claims, as it states

(in relevant part) that the "ownership by a person of a valid registration . . . on the principal register under this chapter shall be a complete bar to an action against that person, *with respect to that mark* . . . ." 15 U.S.C. § 1125(c)(6) (emphasis added). However, in their attempt to stretch the Lanham Act's state dilution bar to support their argument, Defendants conveniently leave out the limiting phrase "with respect to that mark," which is clearly a reference to the specific mark that is the subject of the prior-mentioned "valid registration." Defendants' Motion at 6. It would be highly inconsistent to interpret Section 43(c)(6) in a completely different way, *i.e.*, affording the registrant the broad rights and benefits of federal registration to an infinite and unpredictable number of unregistered design or stylized forms of the mark. Such an interpretation is not contemplated by the plain wording of the statute, nor is it supported by case law. Defendants fail to cite a single case supporting their broad and novel theory, and ExxonMobil is unaware of any such authority.

The U.S. Patent and Trademark Office ("PTO") operates under the plain meaning of the statute, treating standard character marks and stylized variations as different marks. The PTO "Does Not Issue Duplicate Registrations" for the same mark covering the same goods and services. TMEP § 703.[2] Yet the PTO routinely accepts registrations for both word marks in standard character form, and marks

---

[2] Copies of all cited authorities unavailable on Westlaw or Lexis are attached as Ex. 1 to this motion.

that are stylized variations of the same letters (such as the two COCA-COLA registrations referenced in Defendants' Motion, *see* Defendants' Motion at 10, the FXX word and design marks at issue here, and many others).

*Westchester Media*, cited by Defendants, also supports the plain meaning of the statute.  In *Westchester Media*, the plaintiffs' registration was for the mark POLO, and the defendant asserted a Texas state dilution claim against that exact mark—not against a design or stylized form of the registered mark, as in this case. *See Westchester Media Co. v. PL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 977 (S.D. Tex. 1999), *aff'd in part, rev'd in part on other grounds*, 214 F.3d 658 (5th Cir. 2000).  This Court correctly concluded that the defendant's state dilution claim was barred based on the plain language of the statute.

Moreover, the policy goal of the state dilution bar that Defendants cite— encouraging federal registration of marks, Defendants' Motion at 7—is better fulfilled by encouraging mark owners to register their marks in the design forms for which they seek protection.  Otherwise, a chaotic situation would result, in which registration owners would have rights in design forms that infringe or dilute others' marks.   Also, as described below, parties with rights in design forms of marks (e.g. McDonald's, University of Wisconsin, or ExxonMobil) would be forced to oppose applications or petition to cancel registrations for marks in standard character form to prevent others from obtaining rights (including

potentially incontestable rights) to use infringing or dilutive design forms of those marks, and to preserve the right to state dilution claims. This increase in the number of challenges would have a detrimental effect on the number of federal applications. Defendants' interpretation would also create a disincentive for some to register marks in design forms because they could instead rely only on their federal registrations for marks in standard character form to assert or protect their "rights" in a design form of the mark.

On the other hand, barring state dilution claims only with respect to the mark *as registered* protects registered marks from interference by state or territorial legislation, another stated policy goal of the state dilution bar cited by Defendants, without creating the chaotic situation described below.

## 2.    Defendants' theory would lead to absurd and illogical results

Defendants' unprecedented theory is an illogical extension of the state dilution bar found in Section 43(c)(6) of the Lanham Act. It is unsurprising that they fail to cite a single case extending the statutory bar to preclude a state dilution claim against an unregistered design mark based on a word mark registered in standard character form, as such an approach would lead to absurd and illogical results. For example, following Defendants' reasoning that a registration in standard character form extends all the rights and benefits of registration to any design or stylized variation of the registered mark, ExxonMobil's ownership of an

incontestable federal registration in standard form for the mark MOBIL[3] would entitle it to use the mark in a design form in which the "M" is McDonald's famous "Golden Arches" (shown below), and McDonald's could not assert a state dilution claim to challenge such use.[4] Or, Starwood Hotels, the owner of incontestable federal registrations for W and W HOTELS in standard character form,[5] would be entitled to use the University of Wisconsin's well-known "Motion W" logo (shown below) in the mark—and the University of Wisconsin would be precluded from asserting a state dilution claim to challenge such use.





---

[3] *E.g.*, U.S. Reg. No. 1,046,513. *See* Declaration of Tyson Smith, attached hereto as Ex. 2 at ¶ 2, Ex. A.

[4] ExxonMobil notes that this design is for illustrative purposes only, and that it does not use such a design, nor does it have any plans whatsoever to incorporate the Golden Arches into its mark MOBIL.

[5] U.S. Reg. Nos. 2,289,607 and 2,294,753. *See* Ex. 2 at ¶ 3, Ex. B.

The city of Amarillo, Texas provides a good example of just how outrageous the results under Defendants' theory could become. Amarillo recently had an unfortunate situation where its new logo was purportedly copied from an existing design, resulting in a redesign of the logo and leading the local newspaper to sponsor a parody logo contest.[6] One of the most popular entries featured a play on the trademark angle with a logo that would obviously violate the design marks of eight different trademark owners:



Because the Amarillo Chamber of Commerce owns a registration for the mark AMARILLO CHAMBER OF COMMERCE in standard character form,[7] under Defendants' theory, it could use this logo, simply replacing the text below the designs with "Chamber of Commerce," without fear that the owners of the appropriated logos could assert a state dilution claim.

Defendants' interpretation of Section 43(c)(6) would thus require McDonald's to proactively oppose all applications for any standard character mark incorporating the letter "M" to preserve its right to assert a state dilution claim, just

---

[6] *See* Ex. 2 at ¶ 4, Ex. C (article from the Amarillo Globe-News describing these events, and the results of the parody logo contest).

[7] U.S. Reg. No. 2,627,327. *See* Ex. 2 at ¶ 5, Ex. D.

in case an applicant should decide to exercise its "right" to depict the letter "M" using the Golden Arches. In 2013 alone, this would mean McDonald's would have had to oppose all 58,704 applications for standard character word marks incorporating the letter "M" that were published for opposition that year.[8] Extending beyond just McDonald's, in 2013 there were 188,296 published applications for standard character marks.[9] Under Defendants' interpretation, owners of trademarks featuring letter(s) or number(s) in design form would have to oppose any of these applications that incorporate the letter(s) or character(s) for which the trademark owners' design marks cover. For example, The University of Wisconsin would also need to oppose any application for a mark in standard character incorporating the letter "W" to preserve its state dilution claims. Likewise, ExxonMobil would be required to oppose all applications in standard form for any mark incorporating a double X ("XX"), which as explained below, ExxonMobil does not necessarily consider to infringe or dilute its EIX Marks[10] unless presented in a similar interlocking X design form.

In addition, using Defendants' reasoning that all the rights and benefits of a registration in standard characters extend to any design form of the mark, an owner of an incontestable registration in standard character form would have the *exclusive*

---

[8] *See* Ex. 2 at ¶ 6, Ex. E.
[9] *See id.*
[10] ExxonMobil refers to its interlocking X marks, including the Exxon Emblem, the stylized EXXON mark, Interlocking X Device, and ExxonMobil logo, collectively as the EIX Marks. *See also* Plft's Am. Complaint, paras.11-13 (Docket Entry No. 15).

right to use that mark in any design form it chooses, including any design or stylization that would infringe or dilute others' marks.   *See* 15 U.S.C. § 1115(b) (an incontestable registration is "conclusive evidence of . . . the registrant's exclusive right to use the registered mark in commerce," subject to limited defenses).   Thus, under Defendants' theory, unless McDonald's or the University of Wisconsin (or other similarly situated mark owners) opposed registration of all standard character marks incorporating an "M" or "W," once the standard character registrations became incontestable they would lose all opportunity to challenge any use of the Golden Arches or "Motion W" logo in connection with the incontestable registration.

**3.      The rights associated with a registration in standard characters reside in the wording of the mark, not in design or stylized variations**

Defendants also misconstrue the undisputed proposition that registering a mark in standard character form entitles a registrant to support that registration by depicting the mark in any form regardless of font, style, size, or color, concluding with a leap in logic that this proposition means the statutory bar also applies to all such depictions.   What this proposition actually means, though, is that the registrant is not limited to any particular depiction of the mark, such as how it is actually used in commerce.   *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 950

(Fed. Cir. 2011); TMEP § 1207.01(c)(iii).[11]  But the *rights* associated with a word mark in standard character form reside in the *wording* (i.e. letters) of the mark, *not in any particular display of the word.*  *In re White Rock Distilleries Inc.*, 92 U.S.P.Q.2d 1282, 1284 (TTAB 2009) (emphasis added); TMEP § 1207.01(c)(iii). Further, as Defendants point out, the PTO defines a registration in standard character form as one "*without claim* to any particular font, style, size or color." *See* 37 C.F.R. § 2.52(a) (emphasis added).

The example in Defendants' Motion illustrates this point well.  The Coca-Cola Company's registration for COCA-COLA in design form provides "additional protection" that its standard character registration for COCA-COLA does not afford.  If The Coca-Cola Company did not also own rights in the separate stylized COCA-COLA design mark, it could not challenge the stylized elements of the stylized ENJOY COCAINE mark based on its standard character federal registration for the term COCA-COLA.

Further, the distinction between "standard character" and "special form" drawings is a creature of the PTO; it has no statutory or common law roots.  *See, e.g.,* 37 C.F.R. § 2.52 and TMEP §§ 807.03-04.[12]  Instead, the distinction is a regulatory or administrative framework used exclusively by the PTO.  *See, e.g., In re Viterra Inc.*, 671 F.3d 1358, 1364 (Fed. Cir. 2012) ("The T.T.A.B. should

---

[11] *See* Ex. 1.
[12] *See* Defendants' Motion, Ex. 1.

simply use the *DuPont* factors to determine the likelihood of confusion between depictions of standard character marks that vary in font, style, size, and color and the other mark"); *Citigroup v. Capital City Bank Group, Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011) (same); s*ee also* TMEP § 1207.07(c)(iii).   Defendants cite no cases, nor is ExxonMobil aware of any, applying this framework outside the context of PTO proceedings.

Thus, while Defendant is not restricted by its standard character registrations for the FXX mark (covered by U.S. Reg. No. 4,449,045 and 4,449,046, hereinafter referred to as the "FXX Registrations") to any particular depiction of FXX, Defendants' rights associated with the FXX Registrations are in the term FXX, not any design or stylized form of that mark.  Those rights do not extend to a bar on a state dilution claim against unregistered stylized version of the mark, including the FIX designs.

### 4.    Defendants misconstrue and overstate ExxonMobil's claims

Defendants correctly point out that ExxonMobil did not oppose Defendants' application to register FXX in standard character form, and that ExxonMobil has co-existed with a number of standard character mark registrations containing an "XX" element.  That is because ExxonMobil does not assert that all XX-formative marks infringe or dilute its EIX Marks.  Instead, ExxonMobil is concerned only with those applications, registrations, or uses in which the XX is presented in a

similar interlocking double-X design, such as the FIX designs, where the X's share a common line, forming a "three-stroke" interlocking X.   In contrast, the registrations portrayed in Defendants' Motion all feature four-stroke XX designs in which the two X's are separate and distinct despite overlapping, thus creating a very different commercial impression from the interlocking X design featured in ExxonMobil's EIX Marks (and Defendants' FIX designs).

However, under Defendants' theory, to maintain state dilution claims and protect against incontestable registrations, ExxonMobil could not take the reasonable and prudent approach of opposing applications for only those XX marks that create a similar commercial impression to (and likelihood of confusion or dilution with) its EIX Marks.  Instead, ExxonMobil would have had to oppose registration of *each* of the "more than fifty" federal registrations that Defendants purport exist for marks incorporating a "XX" in standard character format (not to mention Defendants' standard character FXX Registrations) as each could conceivably be used in a problematic interlocking format without being subject to a state dilution claim.  Moreover, many registrations for standard character marks incorporating "XX" are now incontestable, and under Defendants' theory the owners could claim the exclusive right to use an interlocking XX design identical to ExxonMobil's and be immune from virtually any challenge.  This is not and cannot be what Section 43(c)(6) of the Lanham Act contemplates.

**5.    Even Defendants' incorrect interpretation of the state dilution bar would not cover Defendants' standalone Interlocking X design**

Defendants' FIX designs include not only their interlocking FXX logo, but also a standalone Interlocking X design, shown in paragraph 27 of Plaintiff's Amended Complaint.  It is undisputed that Defendants do not own any registration for the mark "XX," in standard characters or otherwise.  Thus, even applying Defendants' incorrect and unsupported theory, ExxonMobil's state dilution claim against this mark is valid.

## V.    CONCLUSION

Defendants' interpretation of the scope of the statutory bar in Lanham Act Section 43(c)(6) is incorrect and unsupported by law.  Accordingly, Defendants' motion should be denied.

Respectfully submitted,

**BECK | REDDEN L.L.P.**

Dated: January 23, 2014

By: _Stu ml   by permission_

David J. Beck
Texas State Bar No. 00000070
Federal I.D. No. 16605
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone:  (713) 951-3700
Telecopier:  (713) 951-3720

**ATTORNEY IN CHARGE FOR
EXXON MOBIL CORPORATION**

**OF COUNSEL:**

Alex B. Roberts
BECK REDDEN LLP
Texas State Bar No.  24056216
Federal Bar No. 865757
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone:  (713) 951-3700
Telecopier:  (713) 951-3720

Louis T. Pirkey
Texas Bar No. 16033000
Federal Bar No. 391

Stephen P. Meleen
Texas Bar No. 00795776
Federal Bar No. 24154

Tyson D. Smith
Texas Bar No. 24079362
Federal Bar No. 2016979

PIRKEY BARBER PLLC
600 Congress Avenue, Suite 2120
Austin, TX  78701
Telephone:  (512) 322-5200
Facsimile:  (512) 322-5201

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served

on Defendants' counsel of record on this 23 day of January, 2014, by electronic

service through the Court's CM/ECF service:

James Edward Maloney
Paul L. Mitchell
Brian C. Pidcock
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX  77002

Miles J. Alexander
William H. "Bill" Brewster
R. Charles Henn, Jr.
Sabina A. Vayner
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528

Larry McFarland
KILPATRICK TOWNSEND & STOCKTON LLP
9720 Wilshire Blvd PH
Beverly Hills, CA  90212-2018