IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION, § § Plaintiff, § § v. § § FX NETWORKS, LLC, TWENTIETH § CENTURY FOX FILM § CORPORATION, TWENTY-FIRST § CENTURY FOX, INC., and FXX § NETWORK, LLC, § § Defendants. § | Civil Action No. 4:13-cv-02906 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS COUNT V OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants submit the following reply brief in further support of their Motion to Dismiss Count V ("Dilution Under Texas Law") of the Amended Complaint filed by Plaintiff Exxon Mobil Corporation ("Exxon" or "Plaintiff"), and respectfully show the Court as follows:

**I.   INTRODUCTION**

Defendants' motion to dismiss advances two, simple black-letter propositions: (1) a "standard character" federal trademark registration covers all forms of the mark, including stylization; and (2) pursuant to Section 43(c)(6) of the Lanham Act, a federal registration acts as a bar to a state law dilution claim.

1

Defendants own a federal registration for the mark "FXX" in standard character form. A standard character mark registration includes any stylized form of the mark. The stylized FXX mark at issue unquestionably is a stylized form of, and encompassed by, Defendants' federal registration. Pursuant to Section 43(c)(6), a federal registration bars a state law dilution claim with respect to that mark. Exxon's state law dilution claim therefore is barred.

Exxon's opposition brief suggests that trademark owners might face a parade of horribles if Defendants' motion is granted, but in doing so Exxon misses the point: Section 43(c)(6)'s bar applies *only* to state law dilution claims. It does *not* apply to federal dilution claims, federal trademark infringement or unfair competition claims, or state law trademark infringement or unfair competition claims. Despite Exxon's arguments, owners of famous marks were not concerned about Section 43(c)(6) at the time of its enactment; instead, they were major supporters of that provision in the federal dilution statute because it meant that they need not be concerned with widely disparate state dilution statutes if they owned a federal trademark registration.

Here, granting Defendants' motion to dismiss would result in precisely what Congress intended—Defendants' federal registration of the FXX mark (in standard character form) would bar only a claim under the Texas anti-dilution statute (in Count V of the Amended Complaint), and leave Exxon with a full array of federal

and state trademark infringement and unfair competition claims (*including* a dilution claim under federal law).

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. Exxon Ignores the Continuing Availability of Other Causes of Action

It is well understood that the federal dilution statute was designed to "bring uniformity and consistency to the protection of famous marks," to provide "a further incentive for the federal registration of marks," *and* to "protect registered marks . . . from interference by state, or territorial legislation." H.R. REP. NO. 104-374, at 3, 7 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 1029, 1030, 1034. As noted by this Court,

> [a]llowing state dilution claims to proceed against owners of federally registered marks would interfere with federal law and discourage the federal registration of marks, contrary to the purpose of the Lanham Act.

*Westchester Media Co. LP v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 977 (S.D. Tex. 1999), *aff'd in part, rev'd in part on other grounds*, 214 F.3d 658 (5th Cir. 2000).

Exxon, by arguing the imagined evils of the lack of a state law dilution remedy, simply ignores that the law—as declared by this Court and others—is clear: "[i]f a party asserts a dilution claim against one who owns a federally registered mark, it must proceed under the federal dilution statute." *Westchester*

3

*Media*, 103 F. Supp. 2d at 977{ TA \s "Westchester Media" }. That the *Westchester* court considered this issue in the context of a plain word mark rather than a stylized mark has no bearing on the application of the plain language of Section 43(c)(6). In other words, Exxon's contention that the Section 43(c)(6) bar would result in "a chaotic situation" (Exxon Brief,[1] at 5) and "absurd and illogical results" (*id*. at 6) is not true for McDonald's, Coca-Cola, or any of the other companies noted by Exxon. All of these entities, if faced with the circumstances depicted in the Exxon Brief, would have the same other remedies that Exxon asserts in its multi-count Amended Complaint (Dkt. No. 15):

- Federal trademark infringement (Section 32 of the Lanham Act);
- Federal unfair competition (Section 43(a));
- Federal trademark dilution (Section 43(c)); and
- Common law trademark infringement (under state law).

No trademark owner would be left helpless in the face of blatant infringement.[2] Although Exxon repeatedly suggests that the Section 43(c)(6) bar, if applied,

---

[1] "Exxon Brief" refers to "Plaintiff's Response to Defendants' Rule 12(b)(6) Motion to Dismiss Count V of Plaintiff's Amended Complaint" (Dkt. No. 34).

[2] In fact, trademark owners overwhelmingly favored the adoption of Section 43(c)(3) in the Federal Trademark Dilution Act, and the continuation of that same provision in Section 43(c)(6) of the Trademark Dilution Revision Act. *See Revising the Federal Trademark Dilution Act: Hearing Before the Subcomm. on Courts, the Internet, & Intellectual Property of the H. Comm. on the Judiciary*, 108th Cong. 5-13 (2004)

would mean that a defendant "would be entitled" to use a particular mark (Exxon Brief, at 7), or "it could use this logo," (*id.* at 8), that contention is wrong, and simply ignores the myriad of other forms of relief available to a trademark plaintiff. Again, the only claim no longer available would be *state* law dilution, precisely as Congress intended in enacting the bar contained in the federal dilution statute.

> B. **A Standard Character Federal Registration Covers All Stylized Variations of That Mark**

Exxon contends that "the rights associated with a registration in standard characters reside in the wording of the mark, not in the design or stylized variations." Exxon Brief, at 10. As discussed below, Exxon is confusing the terms "stylized" and "design," but more fundamentally it fails to take into account that "the wording of the mark" necessarily includes stylized variations. Indeed, Exxon's own authority confirms that "[a] registrant is entitled to *all* depictions of a standard character mark, *regardless* of the font style, size, or color, and not merely 'reasonable manners' of depicting such [a] mark." TMEP § 1207.01(c)(iii)

---

(statement of Jacqueline A. Leimer, President, International Trademark Association (INTA)), *also available on Westlaw at* 2004 WL 871082 (testifying before Congress on behalf of INTA, a not-for-profit organization comprised of over 4,300 members, which is the largest organization in the world dedicated solely to the interests of trademark owners, and noting that "[a] valid federal registration should, however, be a complete bar to a state dilution claim. This is the scenario under the FTDA and we recommend that it remain unchanged in a revised federal dilution statute.").

(emphasis added).³ The definition of a registration in standard character form as one "without claim to any *particular* font style, size, or color" should be construed in just that way; "without claim to any particular font" means that the registration covers *all* potential font styles. See 37 C.F.R. § 2.52(a).

Exxon's discussion of the COCA-COLA registrations example misses the point for a number of reasons. First, if Coca-Cola *only* used stylized lettering, that use still would support a federal trademark registration in "standard characters." Thus, the use reflected on the left below—*notwithstanding* the stylization (or color)—would support a registration of the COCA-COLA mark in the plain, standard character format (on the right) because *every* form of stylization fits within the "standard character" mark:

      COCA-COLA

Second, the script registration gave Coca-Cola *extra* ammunition to challenge use of ENJOY COCAINE, but Exxon is wrong when it contends that Coca-Cola "could not challenge" this use without the extra registration (Exxon Brief, at 11); Coca-Cola certainly could have alleged federal trademark infringement of its standard character registration, as well as federal and state unfair competition

---

³ All cited authorities unavailable on Westlaw or Lexis were included previously by Exxon in connection with the Exxon Brief. See Dkt. No. 34, Exhibit 1.

(based on use and without such a registration), under the very same likelihood of confusion test. Again, Coca-Cola obtained a specialized registration to assist it, but this additional registration was not essential.

By referring to "design," Exxon's argument conflates the distinction between stylized marks and design marks. *See* Exxon Brief, at 10-11. A "***standard character***" registration is in block letters; a ***stylized*** version of that mark is just that – a stylized form of the block letter registration. In contrast, a ***design*** mark consists of or contains matter beyond the words, *i.e.*, graphics or designs. Thus, for example, the marks on the left below contain a "design" (with a button and bottle, or the state outline) while the marks on the right are "stylized":



Nobody would contend that a "standard character" registration covers the "designs" on the left (above), but everyone would agree that the standard character registrations of COCA-COLA and UT include the "stylized letters" on the right. Because Exxon misapprehends this important distinction, the cases it cites are

inapposite. For example, in *In re White Rock Distilleries Inc.*, 92 U.S.P.Q.2d 1282, 1284 (T.T.A.B. 2009), the Trademark Trial and Appeal Board ("Board") noted that the "prominent design feature" and the incorporation of an additional term in the registered mark served to distinguish that mark from the applied-for mark, stating that, "[g]enerally, rights in the word would not be extended to include protection for that word combined with, for example, other words or a design element." *See also In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (viewing mark at issue as a "composite mark containing both words and a design").

Discussing the distinction between stylized word marks and design marks, the Board previously explained that a standard character mark registration affords the registrant protection for stylized variations of the registered mark, but not additional design or word components:

> a scope of protection which encompasses all reasonable manners in which the word [mark] could be depicted including, simply by way of example, all lower case block letters, all upper case block letters, a mixture of lower case and upper case block letters and various script forms. However, [these] registrations of the word [mark] in typed drawing form do not afford [the registrant] rights in the word [mark] combined with other wording or with designs.

*Fossil, Inc. v. The Fossil Grp.*, 49 U.S.P.Q.2d 1451, 1454 (T.T.A.B. 1998). The Board's observation—that the standard character mark covers "all reasonable

8

manners in which the word [mark] could be depicted"[4]—is precisely the point that Defendants are making. The fact that a standard character mark does not include a word "with designs" is inapposite here, as no design is involved.

### C. The Plain Language of Section 43(c)(6) Confirms That Exxon Fails to State a Claim for Dilution under Texas State Law

Exxon, attempting to leverage the "with respect to that mark" clause of Section 43(c)(6), cites Section 703 of Trademark Manual of Examining Procedure ("TMEP") to argue that the USPTO views "standard character marks and stylized variations as different marks" because the USPTO "routinely accepts registrations for both word marks in standard character form, and marks that are stylized variations of the same letters." Exxon Brief, at 4-5.

Exxon is correct that "[t]he plain text of Section 43(c)(6) is clear regarding the applicability of the statutory bar to state dilution claims," (Exxon Brief, at 3), but is mistaken in applying that "plain text." The phrase "that mark" in Section 43(c)(6) encompasses both the standard character mark *and* any stylized form of that mark. Indeed, the authority Exxon cites unequivocally clarifies this precise issue, stating that "[a] standard character drawing and a special form drawing *of the same mark* would *not* result in duplicate registrations." TMEP § 703 (emphasis added). In other words, while Defendants can obtain ***different***

---

[4] The "reasonable manners" restriction was removed recently, broadening the scope of protection even further. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011).

*registrations* for the FXX mark in both forms depicted below, these forms indeed are viewed as "*the same mark*," whether depicted in standard characters or in a stylized format:

 

Thus, the standard character FXX mark registration—which includes the stylized version of that mark within its scope—bars Exxon's Texas state law dilution claim.

Exxon makes much of the lack of case law authority addressing the precise issue presently before the Court. But this is to be expected. In the vast majority of cases, as here, the state law dilution claim is combined with several additional causes of action, such as federal and state trademark infringement and unfair competition and federal dilution. Because the ultimate outcome of almost all cases turns on these other causes of action, separate discussion and evaluation of the state law dilution claim often is unnecessary, explaining why reported decisions discussing the application of Section 43(c)(6) are scarce in general, let alone where the stylization of a mark is at issue.[5] Here, however, Defendants are applying the

---

[5] Of course, little need exists to develop robust case law where the statutory language and its application are unambiguous. *See, e.g.*, Jerre B. Swann, *Dilution Redefined for the Year 2000*, 90 TRADEMARK REP. 823, 860-61 (Nov.-Dec. 2000) ("[T]he result should parallel that generally reached in likely confusion cases where a defendant uses an identical mark on competing goods. Typically, 'such cases are 'open and shut' and do

plain language of the Section 43(c)(6) bar to eliminate unnecessary discovery, costly experts, and multiple surveys directed specifically and only to the Texas anti-dilution statute, bringing the state law dilution claim to the Court's attention. Indeed, while Exxon complains about the lack of a decision precisely on all fours with the issue raised in Defendants' motion, the basic elements of the motion are black-letter law, and Exxon cites no contrary cases supporting its position.

## III. CONCLUSION

The statutory bar in Section 43(c)(6) of the Lanham Act was designed to eliminate the exposure of owners of federal registrations to the multitude of different state law dilution statutes (as outlined in Defendants' opening brief), and is intended to apply to all stylized variations of a standard character mark registration. Granting Defendants' motion to dismiss based on that statutory bar would not only comply with the goals of its enactment, but also would have very practical consequences for this case, including eliminating unnecessary discovery, costly experts, and multiple surveys directed specifically and only to the Texas anti-dilution statute. Under Section 43(c)(6), Exxon's state law dilution claim is

---

not involve protracted litigation to determine liability.' Federal Express, therefore, should not have found its 'way into the appellate reports,' and the lower court's decision should have been summarily reversed when it did." (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 (6th Cir. 1988)); *cf.* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:20 (4th ed. 2013) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.").

barred, and Defendants' motion to dismiss should be granted. Defendants intend to defend vigorously against the legion of counts in Exxon's Amended Complaint, but a claim barred by federal law should not be one of them.

Respectfully submitted this 4th day of February, 2014,

/s/ *James Edward Maloney*
James Edward Maloney
Tex. Bar No. 12881500
(Fed. Bar No. 01419)
**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-3995
Facsimile: (713) 238-7246

*Attorney-in-charge for Defendants*

**Of Counsel:**

Paul L. Mitchell
Tex. Bar No. 14217920
(Fed. Bar. No. 07495)
Brian C. Pidcock
Tex. Bar No. 24074895
(Fed. Bar No. 1654553)
**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-3995
Facsimile: (713) 238-7246

William H. Brewster (*pro hac vice*)
Miles J. Alexander (*pro hac vice*)
R. Charles Henn Jr. (*pro hac vice*)
Sabina A. Vayner (*pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Larry McFarland (*pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
9720 Wilshire Boulevard PH
Beverly Hills, California 90212-2018
Telephone: (310) 777-3750
Facsimile: (310) 388-5917

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was filed electronically using the CM/ECF system on February 4, 2014, which will automatically notify and effect service on all attorneys of record, who are deemed to have consented to electronic service via the Court's CM/ECF system, per LR 5.3:

                                                */s/ James Edward Maloney*
                                                James Edward Maloney *Attorney for Defendants*