IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 4:13-cv-02906 |
| v. | ) | |
| | ) | |
| FX NETWORKS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO EXCLUDE PORTIONS
## OF THE EXPERT REPORT OF DR. ROBERT FRANK AND
## RELATED TESTIMONY AND MEMORANDUM IN SUPPORT

**ANDREWS KURTH LLP**

Paul L. Mitchell
Tex. Bar No. 14217920
(Fed. Bar. No. 07495)
Brian C. Pidcock
Tex. Bar No. 24074895
(Fed. Bar No. 1654553)
Joseph W. Golinkin II
Tex. Bar No. 24087596
(Fed. Bar No. 2515657)
600 Travis, Suite 4200
Houston, Texas  77002
Telephone:  (713) 220-3995
Facsimile:  (713) 238-7246

**KILPATRICK TOWNSEND & STOCKTON LLP**

William H. Brewster (*pro hac vice*)
(*Attorney-in-charge for Defendants*)
R. Charles Henn Jr. (*pro hac vice*)
Sabina A. Vayner (*pro hac vice*)
Jessica A. Pratt (*pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Larry McFarland (*pro hac vice*)
9720 Wilshire Boulevard PH
Beverly Hills, California  90212-2018
Telephone:  (310) 777-3750
Facsimile:  (310) 388-5917

*Attorneys for Defendants*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ..........................................................................................1

II.     LEGAL STANDARD ...................................................................................3

III.    DR. FRANK'S OPINION THAT A PARTY MUST CONDUCT A
        *SECOND* TRADEMARK SEARCH IS CONTRARY TO THE LAW
        AND UNSUPPORTED BY FACTS OR DATA OR BY RELIABLE
        PRINCIPLES AND METHODS....................................................................4

        A.      Dr. Frank's Opinion Would Confuse the Jury Because The Law
                Imposes No Obligation to Conduct a Trademark Search. ...................5

        B.      Dr. Frank's Opinion that a Second Trademark Search was
                Necessary is Unsupported and Unreliable. ..........................................6

        C.      The Handful of Cases Permitting Search-Related Testimony
                Are Inapposite. .....................................................................................9

IV.     DR. FRANK'S OPINIONS REGARDING WHETHER MARKS
        ARE "SIMILAR" IS BASED ON AN IMPERMISSIBLE
        DISSECTION OF THE MARKS, AND IS NOT BASED ON THE
        PROPER STANDARD, WHICH IS THE PERSPECTIVE OF THE
        ORDINARY PURCHASER........................................................................13

        A.      Dr. Frank Improperly Dissects the Parties' Marks. ...........................14

        B.      Dr. Frank's Opinions Regarding Similarity of Third-Party
                "XX" Marks Are Not Based on the Appropriate Standard,
                Which Is the Perspective of Ordinary Purchasers..............................15

V.      THE COURT SHOULD, AS ANOTHER HAS IN THE PAST,
        PROHIBIT DR. FRANK FROM OFFERING ANY LEGAL
        OPINIONS OR CONCLUSIONS...............................................................17

VI.     CONCLUSION...........................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Amicus Comm'ns, LP v. Hewlett Packard, L.P.*,
No. 98-1176, 2000 WL 33348186 (W.D. Tex. 2000) .........................................10

*Amstar Corp. v. Domino's Pizza, Inc.*,
615 F.2d 252 (5th Cir. 1980)........................................................ passim

*Collectable Promotional Products, Inc. v. Disney Enterprises, Inc.*,
No. 06-1187, 2009 WL 1543449 (W.D. Okla. 2009).........................................12

*Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*,
No. 07-cv-2724, 2013 WL 1752405 (S.D. Tex. Apr. 23, 2013)..................... 4, 12

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ....................................................................................4

*E.J. Gallo v. Proximo Spirits, Inc.*,
No. 10-cv-411, 2012 WL 273076
(E.D. Cal. Jan. 30, 2012) ................................................................. 3, 18

*El Chico, Inc. v. El Chico Cafe*,
214 F.2d 721 (5th Cir. 1954)..........................................................................13

*Estate of Sowell v. U.S.*,
198 F.3d 169 (5th Cir. 1999)...................................................... 17, 18

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*,
96 F.3d 135 (5th Cir. 1996)............................................................................3

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) ......................................................................11

*George & Co. v. Imagination Entm't Ltd.*,
575 F.3d 383 (4th Cir. 2009)..........................................................................5

*Hana Fin., Inc. v. Hana Bank*,
135 S. Ct. 907 (2015) ............................................................................ passim

*HealthOne of Denver, Ind. v. UnitedHealth Group Inc.*,
No. 10-cv-01633, 2012 WL 94678 (D. Colo. Jan. 12, 2012) ..............................10

*Icon Enters. Int'l, Inc. v. Am. Prods. Co.*,
No. 04-cv-1240, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ..................... 16, 18

*International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A.*,
   80 F.3d 749 (2d Cir. 1996) ............................................................ 10, 11

*KB Home v. Antares Homes, Ltd.*,
   No. 04-cv-1031, 2007 WL 1893370 (N.D. Tex. June 28, 2007) ........................13

*Kinbook, LLC v. Microsoft Corp.*,
   866 F. Supp. 2d 453 (E.D. Pa. 2012)
   *aff'd*, 490 F. App'x 491 (3d Cir. 2013) ........................................... 12, 13

*King of the Mountain Sports, Inc. v. Chrysler Corp.*,
   185 F.3d 1084 (10th Cir. 1999) ...................................................................6

*Montalto v. Viacom Int'l, Inc.*,
   545 F. Supp.2d 556 (S.D. Miss. 2008) ........................................................13

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ......................................................................4

*Oreck Corp. v. U.S. Floor Sys., Inc.*,
   803 F.2d 166 (5th Cir. 1986) ........................................................... 2, 14, 15

*Pizzazz Pizza & Rest. v. Taco Bell Corp.*,
   642 F. Supp. 88 (N.D. Ohio 1986) ..............................................................6

*Sands, Taylor & Wood v. Quaker Oats Co.*,
   No. 84-cv-8075, 1990 WL 251914 (N.D. Ill. 1990), *aff'd in part*
   *and rev'd in part*, 978 F.2d 947 (7th Cir. 1992) ..............................................11

*Savin Corp. v. Savin Grp*,
   391 F.3d 439 (2d Cir. 2004) ......................................................................11

*SecuraComm Consulting, Inc. v. Securacom, Inc.*,
   166 F.3d 182 (3d Cir. 1999) ........................................................................6

*Snap-Drape, Inc. v. C.I.R.*,
   98 F.3d 194 (5th Cir. 1996) .......................................................................17

*Streetwise Maps, Inc. v. VanDam, Inc.*,
   159 F.3d 739 (2d Cir. 1998) ......................................................................11

## Rules and Regulations

Fed. R. Evid. 403 .........................................................................................4

Fed. R. Evid. 702 ......................................................................................1, 3

## <u>Other Authorities</u>

3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*
§ 19:6.................................................................................................................6

4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*
§ 23:115...............................................................................................................5

Defendants ("FX") request that this Court exercise its gatekeeping function and exclude portions of the Expert Report of Dr. Robert Frank,[1] and related testimony, for failure to satisfy Federal Rule of Evidence 702, as follows:

## I.    INTRODUCTION

In a 106-page Expert Report, Dr. Robert Frank opines on a variety of topics. The court should prohibit Dr. Frank from opining on the following issues:

(1) whether FX should have ordered a *second* trademark "clearance" search;

(2) whether Exxon's "XX" mark is "similar" to certain third-party trademarks; and

(3) the validity of certain legal theories.

First, attempting to manufacture a basis for suggesting that FX adopted the FXX logo in bad faith (no such evidence actually exists), Dr. Frank opines as to the sufficiency of the trademark-clearance search FX ordered for the FXX word mark across entertainment-related goods and services. He opines that "reasonable and typical business prudence" mandated that FX conduct a *second* trademark search for the *stylized* FXX logo for *all* goods and services. Pratt Decl., Ex. 19 at 5. This opinion should be excluded because: (1) it will mislead the jury in light of precedent confirming that *no trademark search of any kind is required*; (2) it is unsupported by sufficient facts or data; indeed his opinion and report reveal a complete absence of empirical or other evidence of corporate behavior in ordering

[1] *See* Declaration of Jessica A. Pratt ("Pratt Decl."), Ex. 19.

trademark searches; and (3) it is not the product of reliable principles and methods, considering that under similar facts Dr. Frank previously testified that no search requirement exists. [2]

Second, attempting to provide Exxon with a crutch to dispose of a multitude of existing third-party "XX" trademarks impacting the scope of Exxon's trademark rights, Dr. Frank opines throughout his report whether various third-party "XX" marks are or are not "similar" to Exxon's "Interlocking X Device." But the law requires that similarity be analyzed based on the marks as a whole,[3] and "[c]ommercial impression, like most issues in trademark law, should be determined from the perspective of the ordinary purchaser …." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 911 (2015) (internal quotations omitted). Dr. Frank's "similarity opinions" violate both of these legal norms. His opinions are (1) based on impermissibly isolating and comparing only the "XX" components of the third-party marks and Exxon's XX mark, and (2) not based on any objective methodology, but simply reflect his viewpoint, which he concedes is *not the same as that of the ordinary consumer*. Dr. Frank's subjective "similarity opinions" are

---

[2] Additionally, in light of FX's appropriate invocation of the attorney-client privilege concerning legal clearance of the FXX trademark, Dr. Frank's opinions on the inadequacy of FX's trademark clearance and the need for a second search would improperly lead the jury to draw an adverse inference, and should be excluded for that reason as well. *See* Defendants' Motion to Exclude Evidence Resulting in an Adverse Inference Regarding FX's Invocation of the Attorney-Client Privilege.

[3] *See Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260-1 (5th Cir. 1980).

particularly improper because, as the Supreme Court recently reiterated, a jury should make the "factual judgment about whether two marks give the same impression." *Id*. at 912 n.2. Dr. Frank's "similarity opinions" should be excluded as they simultaneously invade the province of the jury and mislead the jury.

Third, Dr. Frank offers various ***legal*** opinions – including regarding "exclusive rights," and the doctrines of abandonment and laches. A court recently limited Dr. Frank's purported expert testimony on this identical ground. *See E.J. Gallo v. Proximo Spirits, Inc.*, No. 10-cv-411, 2012 WL 273076, at *18 (E.D. Cal. Jan. 30, 2012) (precluding Dr. Frank from offering legal conclusions). Dr. Frank is not a lawyer, and neither his experience as a researcher of public records nor his Ph.D. in Education equips him with the ability to offer legal opinions. *See First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (expert cannot testify beyond scope of expertise).

## II.   LEGAL STANDARD

Expert testimony is admissible only if "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 serves as a critical gateway to the introduction of expert testimony, with

courts serving to "keep the gate." *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 279 (5th Cir. 1998); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Expert testimony must also comply with Rule 403, which provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See Daubert*, 509 U.S. at 595; *Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, No. 07-cv-2724, 2013 WL 1752405, at *3 n.1 (S.D. Tex. Apr. 23, 2013).

## III. DR. FRANK'S OPINION THAT A PARTY MUST CONDUCT A *SECOND* TRADEMARK SEARCH IS CONTRARY TO THE LAW AND UNSUPPORTED BY FACTS OR DATA OR BY RELIABLE PRINCIPLES AND METHODS

In September 2012, six months before announcing the FXX Network, FX ordered a commercial trademark search for the word mark "FXX," with criteria designed to identify existing, potentially conflicting trademarks across all entertainment-related goods and services. Pratt Decl., Ex. 6. That search returned a report containing 87 results or "references"—including word marks, stylized marks, designs, and various combinations—and was produced in discovery (the "FXX Search Report"). *Id.* Dr. Frank conceded that the FXX Search Report was executed without any identifiable flaws. Pratt Decl., Ex. 19 at 80.

Dr. Frank goes on to opine that "normal and reasonable business prudence" mandated that FX should have ordered a *second* search for (1) the *stylized* FXX

and (2) covering *all* goods and services. *Id.* at 5. Relying on a different trademark search ordered by Exxon's counsel for purposes of this litigation, Dr. Frank concludes that this hypothetical second search would have identified Exxon's Interlocking X trademarks, and consequently FX would have been aware of "a potential major conflict" between the stylized FXX mark and Exxon's trademarks. *Id.* at 5; 84-85. Dr. Frank's opinion that a second search was required—being unsupported by the law, not based on facts or data or the product of reliable principles and methods, and outside his area of expertise—should be excluded.

## A.  Dr. Frank's Opinion Would Confuse the Jury Because The Law Imposes No Obligation to Conduct a Trademark Search.

A junior user's intent in adopting a trademark is one factor in a likelihood of confusion analysis. *Amstar*, 615 F.2d at 263. But, "mere knowledge or awareness of the senior user's mark is not the same as an intent to confuse consumers," 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* ("*McCarthy*") § 23:115; *see also Amstar,* 615 F.2d 252, 263 & n.9. Instead, bad faith intent arises only if a defendant specifically intends to trade on the plaintiff's goodwill *by confusing consumers*, a fact which is not evidenced by a defendant's clearance strategy. Thus, courts routinely prohibit plaintiffs from attempting to raise an issue of bad faith via an examination of defendant's trademark clearance practice. *E.g., George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) ("[T]he failure to conduct a trademark search . . . is . . . irrelevant because

knowledge of another's goods is not the same as an intent to mislead and to cause consumer confusion.") (internal quotations omitted); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1091 (10th Cir. 1999) (jury cannot infer bad-faith based on failure to conduct a trademark search); *SecuraComm Consulting, Inc. v. Securacom, Inc.*, 166 F.3d 182, 189 (3d Cir. 1999) ("it is unreasonable to conclude that … failure to conduct a trademark search established willful ignorance akin to willful infringement").

As the leading treatise explains: "[T]he law imposes no obligation to conduct a trademark search, and the failure to do so does not automatically mark a junior user as guilty of bad faith." 3 *McCarthy* § 19:6; *accord Pizzazz Pizza & Rest. v. Taco Bell Corp.*, 642 F. Supp. 88, 94 (N.D. Ohio 1986) ("[A] defendant is under no duty to conduct a trademark search before selecting a trademark"). Because the law does not require a defendant to order even one trademark search from a commercial trademark search firm, Dr. Frank's opinion that FX should have ordered two commercial searches is inconsistent with applicable law.

**B.    Dr. Frank's Opinion that a Second Trademark Search was Necessary is Unsupported and Unreliable.**

Not only is Dr. Frank's opinion contrary to established law, but it would not assist the jury because his opinion is not based on sufficient data and is unreliable.

*First,* Dr. Frank's opinions are not based on specialized knowledge, facts or data, or reliable principles or methods. At his deposition, Dr. Frank—despite

having conducted thousands and thousands of searches—could not name even one

company with a policy requiring a second search:

> Q.     Can you identify for me the companies that you are aware of that have a policy in place that they are required to order a comprehensive trademark search on each variation of a logo as it is intended to be used?
> A.     I can't name any of them off the top of my head.
> Q.     Can you name one?
> A.     Not at the present, no.

Pratt Decl. Ex. 25 at 48:15-23.

Dr. Frank has *no* information or data about companies ordering a second

commercial search:

> Q.     And so then as you sit here today, you're unaware of the percentage of companies that proceeded to order that second design search?
> A.     In 1996, I would have been unaware of that percentage.
> Q.     And do you have any basis today based on current practices to identify the percentage of companies who have ordered a word mark search and then follow that with a design or a stylized search?
> A.     I'm not aware of any statistics that are kept that would reflect that information.
> ***
> Q.     Could it be as low as five percent?
> A.     Never kept the statistics.
>
> ***
> **Q.     *[Y]ou don't have any basis on which to testify whether even the majority of companies in this situation would make that decision?***
> **A.     *You're correct.***

*Id.* at 56:8-56:20, 55:15-16, 135:19-22 (emphasis supplied).

*Second*, Dr. Frank's unprincipled urging of a requirement of a second search

flies in the face of his opinion in another case, thereby demonstrating that his

"method" is unreliable. There, on behalf of a *defendant* who did not conduct *any* trademark search, he testified as follows:

> Q.   So you wouldn't have any particular expectations that a company as big as Urban Outfitters would conduct such a search before bringing out a new product?
> A.   ***No, I would not say it's an expectation that I think is consistent across businesses of any size.***

*See id.* at 211:9-19; *see also* Pratt Decl. Ex. 26 at 181:25-182:13.

*Third*, Dr. Frank is not qualified to testify about what companies should or should not do. The fact that Dr. Frank cannot identify a single company with a policy or practice of doing a second commercial search, and has himself pronounced that he has no "particular expectations," is hardly surprising. While Dr. Frank worked at CORSEARCH, a search service (that he helped establish), he was only involved in *performing (and reviewing)* searches. He did not field orders, and, critically for purposes of the proffered opinions here, Dr. Frank *never made decisions about if and when searches should be done*:

> Q.   My question was whether you were aware … of a situation in which a company … was considering using a mark that was a line extension of a current mark, that they had ordered … a word mark search … and that they … contacted you to indicate that their corporate policy was that they were required, then, to order a stylized form of that mark?
> ***
> A.   [A]ll that I would see would be the marks that were ordered.
> Q.   So as far as you know personally, for you the answer would be no?
> A.   That would be correct.

Pratt Decl., Ex. 25 at 50:22-51:6, 51:22-52:3. In fact, but for ordering a search for his own company, he never has been involved in making the decision about whether it was necessary or appropriate to order a search:

> Q. And were you involved in making the decision – did you make a decision that a search should be ordered?
> A. Never my decision, it's my clients decision, except for CORSEARCH marks.

*Id.* at 64:25-65:5.

Dr. Frank concedes—as he must—that "the decision about whether clearance is necessary and the method by which clearance is conducted is within the reasonable discretion of the trademark professional." *Id.* at 136:7-12, 20-22. Of course, Dr. Frank is not a trademark professional who orders searches or renders opinions. Because his opinion that FX was required to order a second search is unsupported by the law, data, or informed experience, its exclusion is warranted.

### C. The Handful of Cases Permitting Search-Related Testimony Are Inapposite.

As discussed above, the law imposes no obligation on a defendant to conduct a commercial trademark search before adopting a mark. Courts permit evidence regarding a defendant's clearance strategy in  limited situations principally based on failure to follow specific advice of counsel, corporate policies not  followed,  or  poor investigation  of  marks  identified  in  a  clearance

search.[4]  None of the "exceptions" discussed by those cases is present here; absent such exceptions, no case mandates that a defendant has a duty to conduct two commercial trademark searches.

First, courts permit testimony regarding clearance strategy when the defendant ignored advice of counsel to do additional work. For example, in *International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A.*, 80 F.3d 749 (2d Cir. 1996), the court determined that defendant's failure to conduct a full trademark search prior to a product launch was relevant to a bad faith analysis. But that decision was based entirely on the fact that the defendant searched only federal registrations and applications, and, more importantly, that the defendant "ignored the specific advice of its attorneys to search more thoroughly." 80 F.3d at 753.  Here, in stark contrast, FX's legal counsel ordered a *full* commercial trademark search that included federal and state registrations, common law uses, and other marks, and no evidence suggests that counsel advised FX to do further

---

[4] Courts also permit testimony regarding "what a skilled and experienced trademark practitioner would have found upon review of the Search Report." *HealthOne of Denver, Ind. v. UnitedHealth Group Inc.*, No. 10-cv-01633, 2012 WL 94678, at *5 (D. Colo. Jan. 12, 2012) (lawyer expert permitted to opine on the clearance search conducted by defendants); *see also Amicus Comm'ns, LP v. Hewlett Packard, L.P.*, No. 98-1176, 2000 WL 33348186, at *12 (W.D. Tex. 2000) (law professor declaration concerning adequacy of defendant's search permitted). FX does not object to Dr. Frank testifying about the search report that FX actually ran.

searching.[5]  In *Sands, Taylor & Wood v. Quaker Oats Co.*, No. 84-cv-8075, 1990 WL 251914 (N.D. Ill. 1990), *aff'd in part and rev'd in part*, 978 F.2d 947 (7th Cir. 1992), the court determined that defendant failed to conduct a basic trademark search until days before its first use, and that after receiving the search, it engaged in a cursory and incomplete investigation of plaintiff's mark, which was disclosed in the search. *Id.* at *20. Here, FX conducted a commercial trademark search well before the launch of the FXX network, and the search did not identify any of Exxon's marks as a potential conflict.

Second, courts have considered evidence concerning the absence of a preliminary, on-line search of the United States Patent and Trademark Office ("USPTO") website and web pages, which was expressly contrary to the company's own internal policies.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025 (9th Cir. 2010).  Here, the commercial search ordered by FX included the full range of databases – making it far more extensive than any on-line search alone.  Indeed, following FX's applications to register the stylized FXX marks with the USPTO, the examining attorney at the

---

[5] Additionally, that *International Star* is confined to its facts is confirmed by later Second Circuit opinions. *See Savin Corp. v. Savin Grp*, 391 F.3d 439, 460 (2d Cir. 2004) (holding that failure to conduct search did not create factual dispute as to defendants' good faith); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746 (2d Cir. 1998) ("Defendants' failure to perform an official trademark search, even with the knowledge [of the plaintiff's prior use], does not standing alone prove that they acted in bad faith.").

USPTO similarly indicated that it "found no conflicting marks that would bar registration." *See* Pratt Decl., Exs. 29-30.[6]

Critically, there does not appear to be a single case in which a court permits an expert to testify about the results of a hypothetical, second trademark search. The absence of such law makes sense. Clearance testimony is relevant only to bad faith. Where, as here, a company ran a comprehensive search, then testimony regarding a hypothetical what-could-have-been second search is both irrelevant and prejudicial. The FXX Search Report is evidence that FX "did *not* act with the intent to prey on [Exxon]," regardless of whether a second search "would have been prudent." *See Kinbook, LLC v. Microsoft Corp.*, 866 F. Supp. 2d 453, 468 (E.D. Pa. 2012) *aff'd*, 490 F. App'x 491 (3d Cir. 2013) (single search evidenced that the defendant did not act with predatory intent despite plaintiff's argument that defendant should have conducted a later, second search). Dr. Frank's suggestion that FX can be found to have acted in bad faith by not conducting a *second* search is unprecedented, contrary to the law and the facts of this case, and should be excluded. *See e.g., Cox Operating, LLC*, 2013 WL 1752405, at *3 (S.D. Tex. Apr.

---

[6] There is passing mention of testimony regarding trademark search strategy in *Collectable Promotional Products, Inc. v. Disney Enterprises, Inc.*, No. 06-1187, 2009 WL 1543449, at *12 (W.D. Okla. 2009). In *dicta*, the court noted plaintiff's argument that defendants' trademark search efforts were insufficient; and (2) one of the defendants had a prior (licensing) relationship with plaintiff. *Id.* The passing mention of whether a search was sufficient is not explained; moreover, here, no such prior licensing relationship existed.

23, 2013) ("What [an expert] would theoretically have required [of the Defendant] is not relevant because it does not make the fact of whether the [acts] actually *were* legally required any more or less true") (emphasis in original); *KB Home v. Antares Homes, Ltd.*, No. 04-cv-1031, 2007 WL 1893370, at *9 (N.D. Tex. June 28, 2007) (testimony based on wrong legal standard would confuse and mislead the jury).

## IV. DR. FRANK'S OPINIONS REGARDING WHETHER MARKS ARE "SIMILAR" IS BASED ON AN IMPERMISSIBLE DISSECTION OF THE MARKS, AND IS NOT BASED ON THE PROPER STANDARD, WHICH IS THE PERSPECTIVE OF THE ORDINARY PURCHASER

"The greater the number of identical or more or less similar trademarks already in use on different kinds of goods, the less is the likelihood of confusion." *Amstar Corp.*, 615 F.2d at 259-60 (internal quotation omitted); *accord El Chico, Inc. v. El Chico Cafe*, 214 F.2d 721, 725 (5th Cir. 1954) (similar but not identical marks, "Gay Chico" and "Chico's," relevant to strength); *Montalto v. Viacom Int'l, Inc.*, 545 F. Supp.2d 556, 559 (S.D. Miss. 2008). Thus, in assessing the strength of a mark, it is inappropriate to exclude "similar" (even if not "identical") third-party marks from consideration. *See Kinbook*, 866 F. Supp. 2d at 464 (KINECT FOR XBOX not confusingly similar to the KINBOX mark based, in part, on third-party marks including KINCAFE, KINZIN, and KINDLE).

Exxon seeks to introduce Dr. Frank's opinion so as to artificially narrow the field of relevant third-party marks. However, Dr. Frank's opinions regarding

whether third-party marks, are (or are not) similar to the parties' marks are not reliable for two, independent reasons: (1) he improperly dissected the marks in his analysis; and (2) his opinions were not from the perspective of the ordinary purchaser. In fact, the jury is entirely capable of deciding, and should decide, similarity without consideration of Dr. Frank's unreliable opinion. *See Hana Fin.,* 135 S. Ct. at 910.

## A. Dr. Frank Improperly Dissects the Parties' Marks.

In assessing similarity of marks, which is one factor in the likelihood of confusion test, "the letters must not be viewed in isolation. Rather, we must look at the competing marks in their entirety, and not merely at individual similar features." *Oreck Corp.*, 803 F.2d at 171 (quotation omitted); *accord Amstar*, 615 F.2d at 260-1 ("Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features.").

Dr. Frank engages in impermissible trademark dissection in both his analysis of the similarity of the parties' marks, and the dissimilarity of third-party XX marks to Exxon's "Interlocking X Design." Dr. Frank admitted that his "analysis and [] conclusions in this case are based not on the FXX stylized mark, but instead on the XX alone." Pratt Decl., Ex. 25 at 202:20-23. Similarly, his analysis and conclusions regarding the third-party XX marks were based *only* on whether the Xs were interlocking and the number of strokes present in the interlocking Xs

element of the marks. *See id.*, Ex. 19 at 3-4. This practice is contrary to applicable law. *See Oreck Corp.*, 803 F.2d at 171; *Amstar*, 615 F.2d at 260-61.

Because Dr. Frank engages in improper trademark dissection, the court should exclude as unreliable his opinions that (a) third-party XX marks are too dissimilar to Exxon's Interlocking X Device to even be considered; and (b) a "potential major conflict" exists between the parties' marks based only on the similarity of the XX element of the parties' marks.

**B.      Dr. Frank's Opinions Regarding Similarity of Third-Party "XX" Marks Are Not Based on the Appropriate Standard, Which Is the Perspective of Ordinary Purchasers.**

The Supreme Court recently reaffirmed that juries are entirely capable of assessing the similarity of marks, and that similarity "should be determined from the perspective of the ordinary purchaser." *Hana Fin.*, 135 S. Ct. at 910.

Dr. Frank opines, without an empirical (or other) basis, that various third-party XX marks are not similar to Exxon's Interlocking X design, and he uses these opinions to draw legal conclusions about, *inter alia*, Exxon's enforcement and the relative strength of Exxon's marks. Dr. Frank admitted that his analysis was not based on the consumer perception of the marks, but rather his own viewpoint. Pratt Decl., Ex. 25 at 150:6-11. Dr. Frank also conceded that he "looks at marks and logos differently than most people do" and "processes images differently than a typical consumer would." *Id.* at 91:17-92:2; 198:21-199:1.

Dr. Frank's opinions violate the fundamental principal that "[t]he commercial impression that a mark conveys must be viewed *through the eyes of a consumer.*" *Hana Fin.,* 135 S. Ct. at 910 (emphasis added). Not only are Dr. Frank's opinions unhelpful to the jury (who can perform their own analysis), but his opinions are unreliable because they do not address similarity from the proper perspective. Dr. Frank's opinions as to the dissimilarity of the third-party XX marks to Exxon's Interlocking X design marks, as well as the derivative legal conclusions, must be excluded. *See Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. 04-cv-1240, 2004 WL 5644805, at *5 (C.D. Cal. Oct. 7, 2004) (excluding similar expert opinions on likelihood of confusion and distinctiveness because "an untrained layman is perfectly qualified to decide the issue without enlightenment from those having a specialized understanding of trademark law.").

Dr. Frank's testimony in a previous case—where he was opining for the trademark *defendant*—reveals that his unprincipled approach to "similarity" is not appropriate. In that case, Dr. Frank opined that the stylized "X" in the plaintiff's stylized XTREME LASHES mark was weak, citing similar third-party marks with a full range of *very* different "X" elements, as reproduced below:

| | |
|---|---|
| **Plaintiff's Mark** | XTREME LASHES |
| **Sample Third-Party Marks Cited by Dr. Frank** | Xarini LOVE & NURTURE YOURSELF    Xpress ive    Xseb    XPOSED    LUBExxx    X MILJEUM DEMI |

*See* Pratt Decl., Ex. 25 at 227:2-229:22; Exs. 27-28. Because Dr. Frank obviously is offering his own, *ad hoc* view of similarity—apparently based largely upon which side retains him—rather than any reliable principles or methods, and is not basing it on the perspective of the ordinary purchaser, it must be excluded.

## V.    THE COURT SHOULD, AS ANOTHER HAS IN THE PAST, PROHIBIT DR. FRANK FROM OFFERING ANY LEGAL OPINIONS OR CONCLUSIONS

The Fifth Circuit has "repeatedly held that . . . expert[s may not] render conclusions of law." *See e.g., Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (excluding reports "consisting of nothing more than legal arguments"). As the Advisory Committee notes to Rule 704 make clear, expert opinions which would "merely tell the jury what result to reach" are not permitted. *See Estate of Sowell v. U.S.*, 198 F.3d 169, 172 (5th Cir. 1999).

Notwithstanding the rule, Dr. Frank is simply a vehicle for presenting legal conclusions as expert "evidence," including, by way of example:

a.    "ExxonMobil has not acquiesced …";

b.    "ExxonMobil has not abandoned its Interlocking X's design …";

Pratt Decl., Ex. 19 at 4-6, 105-106. Expert testimony on these legal issues is "clearly an impermissible legal conclusion." *Icon Enters. Int'l, Inc.*, 2004 WL 5644805, at *4.[7]

Dr. Frank's "opinions" on the law are improper (as the governing legal standards will be provided by the Court), seek to substitute his personal judgment for the jury's, and must be excluded. *See Sowell*, 198 F.3d at 172. As has occurred in other cases, Dr. Frank should be precluded from offering legal conclusions. *See E.J. Gallo*, 2012 WL 273076, at *19.

## VI.    CONCLUSION

FX requests that the Court exclude Dr. Frank's expert report and related testimony regarding (1) search reports, including the requirement of ordering a second search; (2) the similarity (or lack of similarity) of trademarks, including any dissected elements; and (3) any legal opinions. The foregoing appears in the Frank Report at pp. 3-6; 43-92, 101-102, 104-106.  *See* Pratt Decl., Ex. 19.

---

[7] In addition, FX has told Exxon that FX does not intend to pursue at trial the previously asserted defenses of acquiescence and abandonment, which makes Dr. Frank's opinions regarding those legal theories irrelevant. *See* Pratt Decl., Ex. 31.

## CERTIFICATE OF LOCAL RULE 7.1(D) COMPLIANCE

FX's counsel consulted with Exxon's counsel in an attempt to resolve this matter, but no agreement could be reached.

Respectfully submitted this 14th day of July, 2015.

*s/ William H. Brewster*

William H. Brewster (*pro hac vice*)
(*Attorney-in-charge for Defendants*)

| | |
|---|---|
| Paul L. Mitchell | R. Charles Henn Jr. (*pro hac vice*) |
| Tex. Bar No. 14217920 | Sabina A. Vayner (*pro hac vice*) |
| (Fed. Bar. No. 07495) | Jessica A. Pratt (*pro hac vice*) |
| Brian C. Pidcock | **KILPATRICK TOWNSEND & STOCKTON LLP** |
| Tex. Bar No. 24074895 | 1100 Peachtree Street, Suite 2800 |
| (Fed. Bar No. 1654553) | Atlanta, Georgia 30309-4528 |
| **ANDREWS KURTH LLP** | Telephone: (404) 815-6500 |
| 600 Travis, Suite 4200 | Facsimile: (404) 815-6555 |
| Houston, Texas 77002 | |
| Telephone: (713) 220-3995 | Larry McFarland (*pro hac vice*) |
| Facsimile: (713) 238-7246 | **KILPATRICK TOWNSEND & STOCKTON LLP** |
| | 9720 Wilshire Boulevard PH |
| | Beverly Hills, California 90212-2018 |
| | Telephone: (310) 777-3750 |
| | Facsimile: (310) 388-5917 |
| | |
| | *Attorneys for Defendants* |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 4:13-cv-02906 |
| v. | ) | |
| | ) | |
| FX NETWORKS, LLC, TWENTIETH | ) | |
| CENTURY FOX FILM | ) | |
| CORPORATION, TWENTY-FIRST | ) | |
| CENTURY FOX, INC., and FXX | ) | |
| NETWORK, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was filed electronically using the CM/ECF system on July 14, 2015, which will automatically notify and effect service on all counsel of record for Plaintiff, who are deemed to have consented to electronic service via the Court's CM/ECF system, per L.R. 5.3:

 *s/ Jessica A. Pratt*
Jessica A. Pratt
*Attorney for Defendants*