IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 4:13-cv-02906 |
| v. | ) | |
| | ) | |
| FX NETWORKS, LLC, TWENTIETH | ) | |
| CENTURY FOX FILM | ) | |
| CORPORATION, TWENTY-FIRST | ) | |
| CENTURY FOX, INC., and FXX | ) | |
| NETWORK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT PRETRIAL ORDER

Pursuant to the Court's Third Amended Scheduling Order dated May 6, 2015 (Dkt. No. 113), Exxon Mobil Corporation ("Exxon" or "Plaintiff") and FX Networks, LLC, *et al.* (collectively, "FX" or "Defendants") submit the following Joint Pretrial Order.

## 1.    APPEARANCE OF COUNSEL

**Attorneys for Exxon**

**Attorneys for FX**

David J. Beck, *Attorney in Charge*
Alex B. Roberts
Michael E. Richardson
Joel T. Towner
BECK REDDEN LLP
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

William H. Brewster,* *Attorney in Charge*
R. Charles Henn Jr.*
Sabina A. Vayner*
Jessica A. Pratt*
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Louis T. Pirkey

Stephen P. Meleen

Tyson D. Smith

Alexandra H. Bistline

PIRKEY BARBER PLLC

600 Congress Avenue, Suite 2120

Austin, Texas 78701

Telephone:  (512) 322-5200

Facsimile:  (512) 322-5201

Larry McFarland*

KILPATRICK TOWNSEND & STOCKTON LLP

9720 Wilshire Boulevard PH

Beverly Hills, California  90212-2018

Telephone:  (310) 777-3750

Facsimile:  (310) 388-5917

*Admitted *pro hac vice*

Paul L. Mitchell

Brian C. Pidcock

Joseph W. Golinkin II

ANDREWS KURTH LLP

600 Travis, Suite 4200

Houston, Texas  77002

Telephone:  (713) 220-3995

Facsimile:  (713) 238-7246

## 2.   <u>STATEMENT OF THE CASE</u>

The Plaintiff in this case is Exxon Mobil Corporation ("Exxon"). Exxon offers oil, gas, fuels, chemicals, lubricants, and related services. Exxon owns federal trademark registrations for four trademarks that incorporate two interlocking Xs, which Exxon uses in connection with its business.

The Defendants in this case are FX Networks, LLC; Twentieth Century Fox Film Corporation; Twenty-First Century Fox, Inc.; and FXX Network, LLC (collectively, "FX"). FX offers television programming and related services, including those offered online and on mobile devices. In September 2013, FX launched the FXX television network, adopting a logo for the new network that incorporates two interlocking Xs.

2

Exxon sued FX, alleging that the logos FX selected for the FXX Network are confusingly similar to and likely to dilute Exxon's four stylized Exxon marks. FX disputes each of Exxon's claims, denies all liability, and contends that Exxon is not entitled to any relief.

## 3.   JURISDICTION

This Court has jurisdiction over all asserted claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, 1367(a), and 1338(a) and (b). There is no dispute as to subject matter or personal jurisdiction.

## 4.   MOTIONS

The following motions are pending before the Court:

### A.   Exxon's Motions

(1)   Plaintiff's Motion to Exclude Portions of Ravi Dhar's Expert Report and Testimony **(Dkt. Nos. 127 (Motion), 146 (Response))**

(2)   Plaintiff's Motion to Exclude Portions of Stephanie Anderson's Expert Reports and Testimony (**Dkt. Nos. 131 (Motion), 155 (Response)**)

### B.   FX's Motions

(1)   Defendants' Motion to Exclude Portions of the Expert Report of Dr. Robert Frank and Related Testimony (**Dkt. Nos. 121(Motion), 145 (Response), 166 (Reply)**)

(2)   Defendants' Motion to Exclude Evidence Resulting in an Adverse Inference Regarding's FX's Invocation of the Attorney-Client Privilege (**Dkt. Nos. 122 (Motion), 147 (Response), 165 (Reply)**)

(3)    Defendants' Consolidated Motion to Exclude the Expert Reports and Testimony of Dr. David Stewart and Dr. James Pomerantz (**Dkt. Nos. 123 (Motion), 151 (Response), 167 (Reply)**)

(4)    Defendants' Motion for Partial Summary Judgment (**Dkt. Nos. 128 (Motion), 153 (Response), 172 (Reply)**)

(5)    Defendants' Motion for Summary Judgment on Plaintiff's Damages Claim (**Dkt. Nos. 129 (Motion), 148 (Response), 173 (Reply)**)

(6)    Defendants' Motion in Limine to Exclude Anonymous Internet Blog Postings (**Dkt. Nos. 130 (Motion, 150 (Response), 170 (Reply)**)

(7)    Defendants' Motion in Limine to Exclude Internal Draft Advertising (**Dkt. No. 178**)

## 5.   <u>CONTENTIONS OF THE PARTIES</u>

### A.   <u>Exxon's Claims and Defenses</u>

Since at least as early as 1971, Exxon has used logos that incorporate a 3-stroke interlocking X design.  It is called a 3-stroke interlocking X design because the two Xs interlock, and whereas two Xs side-by-side would normally require 4 strokes of the pen, these Xs only require 3 strokes.  Exxon's use of a 3-stroke interlocking X design is protected and exclusive pursuant to its use in commerce and federal registrations of four trademarks incorporating that design. Exxon owns strong trademark rights in its famous interlocking X marks, which include the Interlocking X Device shown below and other marks, such as the Exxon and ExxonMobil Logos also shown below, incorporating the Interlocking X Device.

4



Exxon alleges that Defendants are using and have applied to register a logo that consists of the letters FXX incorporating a 3-stroke interlocking X design, shown below, are using a logo that incorporates the same 3-stroke interlocking X design in connection with a smartphone app called "FLUXX", shown below, and have also used a standalone interlocking X design, shown below, to identify and promote the television network FXX.  As FX's CEO John Landgraf estimates, the FXX interlocking X logo has appeared millions of times.  Moreover, Defendants' use of at least the FXX and FLUXX logos is ongoing.

  

Exxon alleges that such use and registration constitutes trademark infringement, dilution, unfair competition, and unjust enrichment under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. ("Lanham Act"), and the laws of the State of Texas. Exxon has also requested that the Court refuse Fox's registration of the FXX logo that is the subject of Application Serial Nos. 85/883,185 and 85/883,187. Exxon contends that Defendants' use of the 3-stroke interlocking X design enables them to trade on and receive the benefit of the recognition and goodwill associated with Exxon's 3-stroke interlocking X design that has been developed over the last four decades. That recognition and goodwill was developed by Exxon at great labor and expense and Exxon has actively and aggressively pursued potential infringers of its trademarks. Moreover, Defendants' use of the 3-stroke interlocking X design is likely to dilute Exxon's trademarks in that the distinctiveness of Exxon's 3-stroke interlocking X design will be impaired and no longer associated exclusively with Exxon.

Exxon also contends that Defendants' infringement was willful. FX selected and commenced using these logos without conducting a proper trademark search. Instead, in 2012, FX conducted a "word" clearance search for the name "FXX." FX and its advertising teams then considered dozens of different logos for the new channel, including the following:

6

    

In March 2013, FX adopted the FXX logo that is at issue in this case.  FX's executives, employees, and their creative agencies testified almost uniformly that they were aware of the Exxon logo and other Exxon marks at the time they designed the FXX logo.  However, FX failed to conduct a trademark clearance for any of the logos it considered.  A comprehensive search would have revealed the Exxon marks. FX's disregard for Exxon's rights is just one example in what has become a pattern of selecting marks with reckless disregard or willful blindness of others trademark rights.  Notably, in response to being notified that Ferrari already used FXX, an FX executive stated that "Well there was the car Infinity FX and that didn't stop us!".

Plaintiff seeks an injunction, disgorgement of profits in an amount of approximately $9 million and a reasonable royalty for Defendants' use of ExxonMobil's 3-stroke interlocking X design in an amount of approximately $20 million, plus attorneys' fees.  Plaintiff also requests that the Court order the U.S. Patent and Trademark Office to refuse registration of application Serial Nos. 85/883,185 and 85/883,187 for Defendants' FXX Logo.

**B.** **FX's Claims and Defenses**

In late 2011, FX decided to launch a new network as a brand extension of the FX network, and engaged multiple outside creative agencies to assist in its exploration process. FX ultimately elected to create a sister network under the name "FXX" (the "FXX Mark"), which shares many of the personality traits of the FX Network – such as exciting, edgy, and bold programming – but targeting a younger, male-skewing demographic. Presented with hundreds of potential options for the new FXX television network logo, FX ultimately chose the logo below (the "FXX Logo"):



FX also created a third network under the name "FXM" that is focused on movies. FX, FXX, and FXM became a "suite" of networks, sharing a common brand identity and history (the "FX Suite"):

  

Despite having no duty to do so, prior to adopting the FXX mark in September 2012, FX ordered a Thomson Compumark trademark clearance search for the "FXX" mark. The results of that trademark search included trademarks in standard character form, as well as in a stylized format or with a design element.

None of Exxon's trademarks were captured within that search. During the process of creating and selecting the FXX Mark and the FXX Logo, neither FX nor any of the creative agencies mentioned Exxon. FX officially launched the FXX Network on September 2, 2013.

FX owns two federal trademark registrations for the FXX Mark for use in connection with television programing, broadcasting, and related services. (U.S. Reg. Nos. 4,449,045 and 4,449,046) issued on December 10, 2013.  In connection with its review of FX's application to register the FXX Mark, the U.S. Patent and Trademark Office did not identify any marks (including the Exxon Marks) with which the FXX Mark was likely to cause confusion or dilution. The U.S. Patent and Trademark Office ("USPTO") granted FX U.S. Trademark Registration Nos. 4,449,045 and 4,449,046 for the FXX Mark notwithstanding Exxon's registrations of the IXD Mark and the other Exxon Marks.

FX also owns two pending federal trademark applications for the FXX Logo (U.S. Serial  Nos. 85/883,185 and 85/883,187) for use in connection with television programing, broadcasting, and related services. In connection with its review of FX's application to register the FXX Logo (Serial Nos. 85/883,185 and 85/883,187), the USPTO did not identify any marks (including the IXD Mark or any of the other Exxon Marks) with which the FXX Logo was likely to cause confusion or dilution. Specifically, in reviewing FX's pending trademark

applications for the FXX Logo, the Examining Attorney at the USPTO "found no conflicting marks that would bar registration," and the applications passed to publication on August 20, 2013.

FX created a smartphone application designed to share custom GIF (Graphic Interchange Format) files, which it named "FLUXX." The FLUXX Logo appears below:



The FLUXX smartphone application is not actively promoted by FX and has been downloaded less than 1,000 times.

Exxon owns trademark registrations for the following four trademarks (the Exxon Marks):



| (the "Exxon Emblem") | (the "Stylized Exxon Mark") | (the "Stylized ExxonMobil Mark") | (the "IXD Mark") |

The Exxon Marks are used in connection with oil, gas, fuels, chemicals, lubricants, and related services. Exxon and FX are not competitors in the marketplace. As to the registrations identified in Exxon's Complaint:

> (1) the Exxon Emblem is registered in connection with "petroleum and petroleum products-namely, industrial oils and greases, petroleum and

lubricants, hydrocarbon rules, petroleum illuminants" (U.S. Reg. No. 968,512);

(2) the Stylized Exxon Mark is registered in connection with "motor fuels, namely, gasoline and diesel fuels" (U.S. Reg. No. No. 3,736,429);

(3) the Stylized ExxonMobil Mark is registered in connection with various goods and services including for example, "polyolefin films made from polyethylene and polypropylene polymer or derivatives for use in the packaging industry; polyolefin in bars, blocks pellets, rods, sheets and tubes for use in the manufacture of packages and labels" (U.S. Reg. No. 2,791,743); and

(4) the IXD Mark is registered in connection with "gasoline" (U.S. Reg. No. 2,305,494).

From 2010-2014, Exxon paid over $5 million to place advertisements on the FX Network. Exxon has advertised its services on shows such as *Rescue Me*, *Justified*, and *The Americans*, as well as on *The League*, a show which now airs on FXX.

On October 2, 2013, Exxon sued FX, alleging the FXX Logo is confusingly similar to and likely to dilute the Exxon Marks. Exxon subsequently alleged that the FLUXX Logo also infringes and dilutes the Exxon Marks. In addition to the FXX Logo and the FLUXX  Logo, Exxon objects to one early advertisement for the FXX network launch (the "Sizzle Ad"), in which the "XX" portion of the FXX Logo appeared separate from the "F" (the "Flashing X's"). A screenshot of the Sizzle Ad appears below:



The Sizzle Ad aired for a brief period in late 2013. No other FX advertising has featured the "XX" portion of the FXX Logo separate from the "F."

In this lawsuit, Exxon asserts the following causes of action: (1) federal trademark infringement; (2) federal unfair competition; (3) federal trademark dilution; (4) common law unfair competition; (5) dilution under Texas law; and (6) unjust enrichment. Exxon also asks the Court to order the USPTO to refuse registration of FX's trademark applications for the FXX Logo. Exxon has not identified any instances of actual confusion. Exxon does not allege any lost sales or actual harm. Instead, Exxon seeks relief in the form of (1) an injunction and (2) actual damages in the form of a reasonable royalty or (3) a disgorgement of FX's profits attributable to the FXX Logo.

FX denies each of Exxon's claims and asserts that Exxon is not entitled to the remedies it seeks. FX contends, among other things, that: (1) the standalone IXD mark is neither strong nor famous (particularly in light of substantial third-party use of "XX" trademarks whether "3-stroke," "4-stroke," or otherwise); (2) FX adopted the FXX Logo fairly and in good faith as a brand extension of its well-known FX mark and as a part of the FX "suite" of channels; (3) FX's use of its

FXX Logo in connection with a television network is not likely to cause confusion with Exxon's use of its marks on fuels, service stations, and other gas-related goods or services; (4) the FXX Logo is not likely to dilute the Exxon Marks, particularly in light of the numerous third parties that already use "interlocking X" marks similar to the Exxon Marks and the fact that Exxon has not designated an expert on likelihood of dilution; (5) Exxon has not suffered any actual damages; and (6) FX's profits are not attributable to the FXX Logo.

FX also contends that (1) FX has not infringed Exxon's rights in the Exxon Marks under (i) 15 U.S.C. §§1114(1), 1125(a), or 1125(c) the Lanham Act, (ii) the common law of unfair competition, or (iii) TEX. BUS. & COM. CODE ANN. § 16.103; (2) FX has not been unjustly enriched; (3) the USPTO should not refuse registration of its pending applications for the FXX Logo; and (4) Exxon is not entitled to any of the requested relief.

FX asserts that Exxon's claims fail as a matter of fact and law for various reasons, including without limitation those set forth in its pending Motions for Summary Judgment (Motions at Dkt. Nos. 128 and 129; Responses at Dkt. Nos 153 and 148; Replies at Dkt. Nos. 173 and 172), *Daubert* Motions (Motions at Dkt. Nos. 121 and 123; Responses at Dkt. Nos. 145 and 151; Replies at Dkt. Nos. 166 and 167); Motions in *Limine* (Motions at Dkt Nos. 122, 130, and 178; Responses at Dkt. Nos. 147 and 150); Replies at Dkt. Nos. 165 and 170; as well as in its

proposed jury instructions (Attachment E-2) and the Motion to Dismiss (and supporting Reply) previously presented to the Court (Dkt. Nos. 18, 36), all of which are incorporated herein by reference. FX contends, among other things, that: (1) the standalone IXD mark is neither strong nor famous; (2) FX adopted the FXX Logo fairly and in good faith as a brand extension of its well-known FX mark and as a part of the FX "suite" of channels; (3) FX's use of its FXX Logo in connection with a television network is not likely to cause confusion with Exxon's use of its marks on fuels, service stations, and other gas-related goods or services; (4) the FXX Logo is not likely to dilute the Exxon Marks, particularly in light of the numerous third parties that already use "interlocking X" marks similar to the Exxon Marks and that Exxon has not designated an expert on likelihood of dilution; (5) Exxon has not suffered any actual damages; and (6) FX's profits are not attributable to the FXX Logo.

FX continues to assert its affirmative defenses of failure to state a claim upon which relief can be granted (Answer to Amended Complaint (Dkt No. 64, First Defense)) and that Exxon's dilution claim under Texas Law is barred in its entirety by Section 43(c)(6) of the Lanham Act, 15 U.S.C. § 1125(c)(6), because Defendant Twentieth Century Fox Film Corporation is the owner of two federal registrations of the FXX mark in standard character form (Reg. Nos. 4449045 and 4449046) (Answer to Amended Complaint (Dkt No. 64, Fourth Defense)), both of

14

which are incorporated by reference as though fully set forth herein. FX has asserted no counterclaims and has withdrawn its affirmative defenses of acquiescence and abandonment.

## 6.    ADMISSIONS OF FACT

The parties reserve objections pursuant to Federal Rules of Evidence 402 and 403 as to the relevance of the following Admissions of Fact.

(1)    Exxon is a New Jersey corporation having its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas 75039.

(2)    Defendant FX Networks, LLC is a Delaware limited liability company with a business address of 10201 West Pico Boulevard, Los Angeles, California 90035.

(3)    Defendant Twentieth Century Fox Film Corporation is a Delaware corporation with a business address of 10201 West Pico Boulevard, Los Angeles, California 90035.

(4)    Defendant Twenty-First Century Fox, Inc. is a Delaware corporation with a business address of 1211 Avenue of the Americas, New York, New York 10036.

(5)    Defendant FXX Network, LLC is a Delaware limited liability company with a business address of 10201 West Pico Boulevard, Los Angeles, California 90035.

(6)    Twenty-First Century Fox, Inc. is the ultimate parent corporation of FX Networks, LLC, Twentieth Century Fox Film Corporation, and FXX Network, LLC.

(7)    The FX Network launched in June 1994.

(8)    On September, 13, 2012, FX ordered a Thomson Compumark trademark search for the FXX word mark.

(9)   FX owns U.S. Trademark Registration No. 4,449,045, issued December 10, 2013, for the FXX word mark for "television transmission and broadcasting services."

(10)  FX owns U.S. Trademark Registration No. 4,449,046, issued December 10, 2013, for the FXX word mark for "entertainment services, namely, music and sports distributed via various platforms across multiple forms of transmission media; providing on-line entertainment information in the field of action music and sports."

(11)  FX owns pending federal trademark application U.S. Serial No. 85/883,185 for the FXX Logo for "television transmission and broadcasting services."

(12)  The U.S. Patent and Trademark Office published FX's application to register the FXX Logo (Serial No. 85/883,185) in the Official Gazette. Exxon has opposed the registration of this application.

(13)  FX owns pending federal trademark application U.S. Serial No. 85/883,187 for the FXX Logo for "entertainment services, namely, music and sports distributed via various platforms across multiple forms of transmission media; providing on-line entertainment information in the field of action music and sports."

(14)  The U.S. Patent and Trademark Office published FX's application to register the FXX Logo (Serial No. 85/883,187) in the Official Gazette. Exxon has opposed the registration of this application.

(15)  FX issued a press release announcing the FXX network on March 28, 2013. The FXX network launched on September 2, 2013.

(16)  FX owns and operates the website at http://www.fxnetworks.com.

(17)  FXNOW is an on-demand video service providing television and movie content from FX , FXX, and FXM networks.

(18)  Exxon owns the trademark in U.S. Reg. No. 968,512.

(19)  Exxon owns the trademark in U.S. Reg. No. 3,736,429.

(20)  Exxon owns the trademark in U.S. Reg. No. 2,305,494.

(21)  Exxon owns the trademark in U.S. Reg. No. 2,791,743.

16

(22)   Exxon uses the trademarks referenced in the preceding statements (U.S. Reg. Nos. 968,512; 3,736,429; 2,305,494; and 2,791,743) in commerce in the United States.

(23)   Defendants use the stylized FXX logo in commerce in the United States.

(24)   The FXX network and the website located at www.fxx.com are accessible to residents of this District and Defendants' advertising and promotion of the FXX network under the FXX word mark and the stylized FXX logo is accessible within this District.

(25)   Defendants use or have used the FLUXX logo in commerce in the United States.

(26)   Defendants continue to use the FXX logo in commerce as of the date of the filing of this Joint Pretrial Order.

(27)   Exxon has been aware of the TJ MAXX mark depicted below (the "TJ MAXX Mark") since August 31, 1988.



(28)   Exxon is aware that the TJ MAXX Mark has been used in the United States.

(29)   Exxon has not requested that the owner of the TJ MAXX Mark cease using the mark and has not initiated legal action concerning the mark.

(30)   Exxon has been aware of the NEXXUS mark depicted below (the "NEXXUS 1 Mark") since January 31, 2002.



(31)   Exxon has not requested that the owner of the NEXXUS 1 Mark cease using the mark and has not initiated legal action concerning the mark.

(32)   The NEXXUS mark depicted below (the "NEXXUS 2 Mark") has been used in the United States.

17



(33) Exxon has not requested that the owner of the NEXXUS 2 Mark cease using the mark and has not initiated legal action concerning the mark.

(34) The AXXERA mark depicted below (the "AXXERA Mark") has been used in the United States.



(35) Exxon has not requested that the owner of the AXXERA Mark cease using the mark and has not initiated legal action concerning the mark.

(36) The MAXX mark depicted below (the "MAXX Beverages Mark") has been used in the United States.



(37) Exxon has not requested that the owner of the MAXX Beverages Mark cease using the mark and has not initiated legal action concerning the mark.

(38) Exxon has been aware of the DOS EQUIS mark depicted below (the "DOS EQUIS Mark") since January 1, 1980.

(39) The DOS EQUIS Mark, with additional accompanying graphics, has been used in the United States.

(40) Exxon has not requested that the owner of the DOS EQUIS Mark cease using the mark and has not initiated legal action concerning the mark.

18

(41)   The ORIXX mark depicted below (the "ORIXX Mark") has been used in the United States.



(42)   Exxon has not requested that the owner of the ORIXX Mark cease using the mark and has not initiated legal action concerning the mark.

(43)   No prior licensing agreement exists between Exxon and FX.

## 7.   <u>CONTESTED ISSUES OF FACT</u>

The following issues of fact must be resolved by the trier-of-fact, but the parties recognize that there may be underlying issues of law that are included within these factual issues.

(1)   Whether the stylized XX graphic in FX's television advertising is a depiction that can be actionable as trademark infringement, unfair competition, or trademark dilution?

(2)   Whether the FXX Logo is likely to cause confusion with the Exxon Emblem?

(3)   Whether the FLUXX Logo is likely to cause confusion with the Exxon Emblem?

(4)   Whether the stylized XX graphic in FX's television advertising is likely to cause confusion with the Exxon Emblem?

(5)   Whether the FXX Logo is likely to cause confusion with the Stylized Exxon Mark?

(6)   Whether the FLUXX Logo is likely to cause confusion with the Stylized Exxon Mark?

(7)   Whether the stylized XX graphic in FX's television advertising is likely to cause confusion with the Stylized Exxon Mark?

19

(8)   Whether the FXX Logo is likely to cause confusion with the Stylized ExxonMobil Mark?

(9)   Whether the FLUXX Logo is likely to cause confusion with the Stylized ExxonMobil Mark?

(10)   Whether the stylized XX graphic in FX's television advertising is likely to cause confusion with the Stylized ExxonMobil Mark?

(11)   Whether the FXX Logo is  likely to cause confusion with the IXD Mark?

(12)   Whether the FLUXX Logo is likely to cause confusion with the IXD Mark?

(13)   Whether the stylized XX graphic in FX's television advertising is likely to cause confusion with the IXD Mark?

(14)   Whether FX adopted the FXX Logo with a bad faith intent, which FX defines as an intent to cause consumer confusion and which Exxon contends can arise from willful blindness in trademark selection?

(15)   Whether FX adopted the FLUXX Logo with a bad faith intent, which FX defines as an intent to cause consumer confusion and which Exxon contends can arise from willful blindness in trademark selection?

(16)   Whether the stylized XX graphic was depicted in FX's television advertising with a bad faith intent, which FX defines as an intent to cause consumer confusion and which Exxon contends can arise from willful blindness in trademark selection?

(17)   Whether the Exxon Emblem was famous throughout the United States as of September 1, 2013?

(18)   Whether the Stylized Exxon Mark was famous throughout the United States as of September 1, 2013?

(19)   Whether the Stylized ExxonMobil Mark was famous throughout the United States as of September 1, 2013?

20

(20)    Whether the IXD Mark was famous throughout the United States as of September 1, 2013?

(21)    Whether the Exxon Emblem was famous throughout the State of Texas or a geographic area in the State of Texas as of September 1, 2013?

(22)    Whether the Stylized Exxon Mark was famous throughout the State of Texas or a geographic area in the State of Texas as of September 1, 2013?

(23)    Whether the Stylized ExxonMobil Mark was famous throughout the State of Texas or a geographic area in the State of Texas as of September 1, 2013?

(24)    Whether the IXD Mark was famous throughout the State of Texas or a geographic area in the State of Texas as of September 1, 2013?

(25)    Whether FX's use of the FXX Logo is likely to cause dilution by blurring of the Exxon Emblem?

(26)    Whether FX's use of the FLUXX Logo is likely to cause dilution by blurring of the Exxon Emblem?

(27)    Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by blurring of the Exxon Emblem?

(28)    Whether FX's use of the FXX Logo is likely to cause dilution by tarnishment of the Exxon Emblem?

(29)    Whether FX's use of the FLUXX Logo is likely to cause dilution by tarnishment of the Exxon Emblem?

(30)    Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by tarnishment of the Exxon Emblem?

(31)    Whether FX's use of the FXX Logo is likely to cause dilution by blurring of the Stylized Exxon Mark?

(32)    Whether FX's use of the FLUXX Logo is likely to cause dilution by blurring of the Stylized Exxon Mark?

(33)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by blurring of the Stylized Exxon Mark?

(34)   Whether FX's use of the FXX Logo is likely to cause dilution by tarnishment of the Stylized Exxon Mark?

(35)   Whether FX's use of the FLUXX Logo is likely to cause dilution by tarnishment of the Stylized Exxon Mark?

(36)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by tarnishment of the Stylized Exxon Mark?

(37)   Whether FX's use of the FXX Logo is likely to cause dilution by blurring of the Stylized ExxonMobil Mark?

(38)   Whether FX's use of the FLUXX Logo is likely to cause dilution by blurring of the Stylized ExxonMobil Mark?

(39)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by blurring of the Stylized ExxonMobil Mark?

(40)   Whether FX's use of the FXX Logo is likely to cause dilution by tarnishment of the Stylized ExxonMobil Mark?

(41)   Whether FX's use of the FLUXX Logo is likely to cause dilution by tarnishment of the Stylized ExxonMobil Mark?

(42)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by tarnishment of the Stylized ExxonMobil Mark?

(43)   Whether FX's use of the FXX Logo is likely to cause dilution by blurring of the IXD Mark?

(44)   Whether FX's use of the FLUXX Logo is likely to cause dilution by blurring of the IXD Mark?

(45)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by blurring of the IXD Mark?

(46)   Whether FX's use of the FXX Logo is likely to cause dilution by tarnishment of the IXD Mark?

(47)   Whether FX's use of the FLUXX Logo is likely to cause dilution by tarnishment of the IXD Mark?

(48)   Whether the stylized XX graphic in FX's television advertising is likely to cause dilution by tarnishment of the IXD Mark?

(49)   Whether the Exxon Marks constitute a "family of marks"?

(50)   Whether FX willfully intended to trade on the recognition of one or more of the Exxon Marks determined to be famous, if any?

(51)   Whether FX willfully intended to harm the reputation of one or more of the Exxon Marks determined to be famous, if any?

(52)   Whether FX's use of the FXX Logo caused Exxon to suffer any actual harm or actual damages?

(53)   Whether FX's use of the FLUXX Logo caused Exxon to suffer any actual harm or actual damages?

(54)   Whether the stylized XX graphic in FX's television advertising caused Exxon to suffer any actual harm or actual damages?

(55)   If FX's use of the FXX Logo caused Exxon to suffer actual harm or actual damages, whether Exxon is entitled to monetary damages in the form of a reasonable royalty?

(56)   If FX's use of the FLUXX Logo caused Exxon to suffer actual harm or actual damages, whether Exxon is entitled to monetary damages in the form of a reasonable royalty?

(57)   If the stylized XX graphic in FX's television advertising caused Exxon to suffer actual harm or actual damages, whether Exxon is entitled to monetary damages in the form of a reasonable royalty?

(58)   Whether FX earned profits attributable to its use of the FXX Logo?

23

(59) Whether FX earned profits attributable to its use of the FLUXX Logo?

(60) Whether FX earned profits attributable to the depiction of the stylized XX graphic in its television advertising?

(61) If FX earned profits attributable to its use of the FXX Logo, whether Exxon is entitled to a disgorgement of those profits?

(62) If FX earned profits attributable to its use of the FLUXX Logo, whether Exxon is entitled to a disgorgement of those profits?

(63) If FX earned profits attributable to the depiction of the stylized XX graphic in its television advertising whether Exxon is entitled to a disgorgement of those profits?

(64) If Exxon is entitled to monetary damages and/or the disgorgement of profits, the amount of damages and/or profits to which Exxon is entitled?

## 8.  **AGREED PROPOSITIONS OF LAW**

(1) To prevail on its claim for federal trademark infringement, a plaintiff must prove that its mark(s) is entitled to protection and that defendant used the same or a similar trademark in connection with the sale of, or the offer to sell, goods or services in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of defendant's goods or services.

(2) The following eight factors or "digits" should be considered in analyzing whether a likelihood of confusion exists: (1) strength of plaintiff's marks; (2) the similarities between the parties' marks; (3) the similarity between the parties' products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) defendant's intent in adopting its mark; (7) evidence of actual confusion; and (8) the care exercised by potential purchasers.

(3) The eight "digits" of confusion are flexible, non-exhaustive, and must be considered in light of the specific circumstances of this case.

(4)     When considering whether a likelihood of confusion exists, the inquiry is whether ordinary consumers, under usual conditions and exercising ordinary care, would be likely to believe that a defendant's products or services originate with or are sponsored or approved by plaintiff, or are in some way connected, associated, or affiliated with plaintiff or its goods or services.

(5)     The same likelihood of confusion test that applies for a federal trademark infringement claim also applies for federal unfair competition and common law unfair competition claims.

(6)     Properly designed and conducted consumer surveys can be evidence of a likelihood of confusion or lack thereof.

(7)     To prevail on its claim for federal dilution, a plaintiff must prove that it owned a trademark that was protectable, distinctive, and famous before defendant began using its trademark, and that defendant's use of its trademark is likely to cause dilution by blurring or by tarnishment.

(8)     Under federal law, a trademark is considered famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.

(9)     Under Texas law, a mark is considered famous if it is widely recognized by the public throughout Texas or in a geographic area of Texas as a designation of the source of the goods or services of the trademark owner.

(10)    In determining whether a trademark possessed the requisite degree of recognition for fame as of the date defendant began use of its trademark, a trier-of-fact may consider all relevant factors, including the following non-exhaustive list:   (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered in the United States Patent and Trademark Office.

(11)    In determining whether a mark is likely to cause dilution by blurring, a trier-of-fact may consider the following non-exhaustive factors: (1) the degree of similarity between the mark at issue and the famous

25

mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark at issue intended to create an association with the famous mark; and (6) any actual association between the mark at issue and the famous mark.

(12)   Dilution by tarnishment occurs through association arising from the similarity between a defendant's trademark use and a plaintiff's famous mark that harms the reputation of the famous mark.

(13)   Properly designed and conducted consumer surveys can be evidence of fame or lack thereof.

(14)   Properly designed and conducted consumer surveys can be evidence of a likelihood of association or lack thereof.

(15)   Willfulness is a prerequisite to recovery of monetary relief for trademark dilution.

## 9.   CONTESTED PROPOSITIONS OF LAW

### A.   Exxon's Propositions of Law

Exxon asserted numerous propositions of law in its motions to exclude (Dkt. Nos. 127 and 131) and in its responses to the Defendants' motions for summary judgment (Dkt. Nos. 148 and 153), motions to exclude certain expert testimony (Dkt. Nos. 145 and 151), and motions in *limine* (Dkt. Nos. 147, 150, and 178). Exxon stands on its legal positions as set forth in those pleadings, as well as those set forth in its draft jury instructions, attached as Attachment E-1, and its pretrial brief, attached as Attachment G-1, which propositions of law are incorporated herein by reference.

In addition, Exxon contends that it should be afforded the opportunity to present testimony contracting or rebutting evidence on the same subject matter introduced by Defendants' experts pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii). This would include testimony from Dr. Phillip Zerrillo.

### B.   FX's Propositions of Law

FX contends in this case that (1) FX has not infringed Exxon's rights in the Exxon Marks under (i) 15 U.S.C. §§1114(1), 1125(a), or 1125(c) the Lanham Act, (ii) the common law of unfair competition, or (iii) Tex. Bus. & Com. Code Ann. § 16.103; (2) FX has not been unjustly enriched; (3) the USPTO should not refuse registration of its pending applications for the FXX Logo; and (4) Exxon is not entitled to any of the requested remedies.

In connection with or in addition to those contentions, FX asserted numerous propositions of law in its summary judgment motions (Motions at Dkt. Nos. 128 and 129; Responses at Dkt Nos. 153 and 148); Replies at Dkts. Nos. 173 and 172), *Daubert* motions (Motions at Dkt. Nos. 121 and 123; Responses at Dkt. Nos. 145 and 151; Replies at Dkt. Nos. 166 and 167), motions *in limine* (Motions at Dkt. Nos. 122, 130, and 178; Responses at Dkt. Nos. 147 and 150; Replies at Dkt. Nos. 165 and 170; Attachment F-2), and proposed jury instructions (Attachment E-2), all of which are incorporated herein by reference. FX provides the following paragraphs to iterate selected legal issues:

(1)     To prove a likelihood of confusion, Exxon must show that confusion is probable, not just possible. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012); *Firefly Digital Inc. v. Google Inc.*, 817 F. Supp. 2d 846, 863 (W.D. La. 2011); *see also* Attachment E-2 to the Joint Pretrial Order (Defendants' Proposed Jury Instructions ).

(2)     Similarity between the parties' marks is determined by comparing the marks' appearance, sound, and meaning, and should be determined on the basis of the total effect of the marks rather than on a comparison of any individual features. *John Crane Prod. Solutions, Inc. v. R2R & D, LLC,* 861 F. Supp. 2d 792, 795-96 (N.D. Tex. 2012); *Firefly Digital*, 817 F. Supp. 2d at 864. The commercial impression of a mark must be derived from the mark as a whole, and each trademark must be considered in its entirety. *Minturn Advert., Inc. v. Hermsen Des. Assocs., Inc.*, 728 F. Supp. 430, 433 (N.D. Tex. 1990); 4 J Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, ("MCCARTHY") § 23:41; *see also* Attachment E-2; Defendants' Consolidated Motion to Exclude the Expert Reports and Testimony of Dr. David Stewart and Dr. James Pomerantz (Dkt. No. 123) at 16 and 18.

(3)     In evaluating similarity, marks must be considered in the context in which a customer would encounter them in the marketplace and the circumstances surrounding the purchase of the parties' respective products and services. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484-85 (5th Cir. 2004); 4 MCCARTHY § 23:58; *see also* Attachment E-2.

(4)     FX's mere knowledge or awareness of one or more of the Exxon Marks is not the same as an intent to confuse consumers. To establish bad faith intent, Exxon must prove that FX intended to take advantage of the goodwill associated with Exxon and the Exxon Marks. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980); *see also* 4 MCCARTHY § 23:115; *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987); *Action Ink v. Anheuser-Busch, Inc.*, 959 F. Supp. 2d 934, 945 (E.D. La. 2013); *see also* Attachment E-2; Defendants' Motion to Exclude Portions of the Expert Report of Dr. Robert Frank and Related Testimony (Dkt. No. 121) at 5; Defendants' Motion for Partial Summary Judgment (Dkt. No. 128) at 15.

(5)     Although evidence of actual confusion is not necessary for a finding of likelihood of confusion, without such a finding, any factors that favor Exxon do not carry much weight. *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F. Supp. 2d 792, 795 (N.D. Tex. 2012); *see also Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986); *Firefly Digital Inc. v. Google Inc.*, 817 F. Supp. 2d 846, 864 (W.D. La. 2011); *see also* Attachment E-2; Dkt. No. 128 at 4.

(6)     The absence of actual confusion evidence is highly significant. *Oreck*, 803 F.2d at 173; *John Crane*, 861 F. Supp. 2d at 801; *Firefly Digital*, 817 F. Supp. 2d at 864; *see also* Attachment E-2; Dkt. No. 128 at 4.

(7)     The USPTO's determination that no conflicting registered marks bar registration of FX's pending applications for the FXX Logo supports a finding that there is no likelihood of confusion.  *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980); *see also* Attachment E-2.

(8)     The same test that applies for a federal dilution claim applies for a Texas state dilution claim, except that the state claim requires that the trademark be famous in Texas or a geographic area of Texas rather than nationwide. *Compare* 15 U.S.C. § 1125(c)(2) *with* Tex. Bus. & Com. Code Ann. § 16.103; *see also* Dkt. Nos. 128, 172.

(9)     Exxon cannot bring trademark dilution claims under federal or Texas law based on FX's non-trademark use of "XX" in a decorative, creative manner in one television advertisement. 4 McCarthy § 24:122; *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012); 15 U.S.C. §§ 1125(c)(1) & (c)(2)(B); Tex. Bus. & Com. Code Ann. § 16.103; *see also* Dkt. No. 128 at 16-17.

(10)    Fame requires a showing that, when the general public encounters the mark in almost any context, it associates the mark, at least initially, with the mark's owner. *T-Mobile US, Inc. v. Aio Wireless LLC*, 991 F. Supp. 2d 888, 930 (S.D. Tex. 2014) (Rosenthal, J.); *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008); *see also* Attachment E-2; Dkt. No. 128 at 6, 9.

(11)    The standard for fame is rigorous and extends protection only to highly distinctive marks that are as well-known throughout the

country. *Bd. Of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.,* 550 F. Supp. 2d, 657, 678 (W.D. Tex. 2008); *Green v. Fornairo*, 486 F.3d 100, 105 (3d Cir. 2007); *see also* Dkt 128, at 6.

(12)    Federal trademark registration alone does not demonstrate fame. *See House of Bryant Publications, LLC v. City of Lake City, Tenn.*, 30 F. Supp. 3d 711, 715 (E.D. Tenn. 2014); 4 MCCARTHY § 24:106; *see also* Attachment E-2; Dkt. No. 128 at 12.

(13)    The absence of a fame survey can support a finding that a trademark is not famous. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,* 703 F. Supp. 2d 671, 698 (W.D. Ky. 2010); *see also* Dkt 128 at 9-10.

(14)    The Exxon Marks are not a "family of marks" because there is no recognition among the purchasing public that the common characteristic of the marks (the IXD) is indicative of a common origin of the goods. *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991); *accord Hornady Mfg. Co. v. DoubleTap, Inc.*, 746 F.3d 995, 1002 (10th Cir. 2014); *Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1117 (N.D. Cal. 2010); *see also* Attachment E-2; Dkt. No. 128 at 13-14.

(15)    The Exxon Marks are not a "family of marks" simply by virtue of Exxon's adoption, use, and registration of similar marks, even if Exxon intended to create a family. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 816 (7th Cir. 2002); *see also* Attachment E-2; Dkt. No. 128 at 13-15.

(16)    Exxon cannot be awarded damages and profits simultaneously if it would result in over-compensation. *See* 5 *McCarthy* § 30:73; *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 264 (E.D.N.Y. 2008).

(17)    If Exxon is entitled to compensatory damages, the amount must be limited to compensation for injuries Exxon proves were proximately caused by FX's allegedly wrongful conduct and cannot be for speculative injuries. *Camowraps, LLC v. Quantum Digital Ventures LLC*, No. 13-6808, 2015 WL 546791, at *7 (E.D. La. Feb. 10, 2015); *accord A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3d Cir. 1999); *see also* Attachment E-2; Defendants'

Motion for Summary Judgment on Plaintiff's Damages Claim (Dkt. No. 129) at 3.

(18) Exxon should be precluded from offering any evidence of actual damages for the reason that Exxon's corporate representative on damages, Mark Jacobson, and its damages expert, Ambreen Salters, both testified that they were unaware of any harm or damage to Exxon. *See Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008); *see also Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197(5th Cir. 1993); *Tex. Tech. Inst., Inc. v. Silicon Valley, Inc.*, No. Civ. A. H-04-3349, 2006 WL 237027, at *5 (S.D. Tex. Jan. 31, 2006); *see also* Dkt. No. 129.

(19) Exxon is not entitled to "actual damages" in the form of a reasonable royalty because there is no licensing relationship (or a history of license negotiations) and because Exxon does not license use of its marks to third parties, making the reasonable royalty calculation impermissibly speculative and based on a hypothetical arrangement that never would have been consummated in the ordinary course of business. *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings*, No. 09-1426 (JRT/SER), 2011 WL 4537970, at *3 (D. Minn. Sept. 29, 2011); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 CIV 7203, 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006); *see also* Attachment E-2; Dkt. No. 129 at 8.

(20) To be proper, a reasonable royalty calculation must bear a rational relationship to the rights appropriated. *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 920 (Fed. Cir. 1984) (discussing *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, 597 F.2d 71, 73 (5th Cir. 1979)); *see also* Attachment E-2; Dkt. No. 129 at 8-9.

(21) If Exxon is entitled to a disgorgement of FX's profits, it is entitled only to those profits attributable to the unlawful use of the FXX Logo by FX. 5 *McCarthy* § 30:65; *see generally Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

(22) An award of FX's profits is subject to the principles of equity, including the following factors: (1) whether FX had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the

adequacy of other remedies; (4) any unreasonable delay by Exxon in asserting its rights; (5) the public interest in making the misconduct unprofitable; and (6) whether this is a case of palming off. *Pebble Beach*, 155 F.3d at 554.

(23)   In calculating FX's profits for purposes of disgorgement, FX may prove that both direct and indirect costs should be deducted from sales deemed attributable to the infringement. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 54 (2d Cir. 1939) (Hand, J.) *aff'd sub nom. Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 60 S. Ct. 681, 84 L. Ed. 825 (1940); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp*, 642 F. Supp. 2d 276 (S.D.N.Y. 2009).

(24)   Portions of the expert report of Dr. Robert Frank and related testimony should be excluded. *See* Dkt. No. 121.

(25)   Exxon should be precluded from introducing evidence resulting in an adverse inference regarding FX's invocation of the attorney-client privilege. *See* Dkt. No. 122.

(26)   The expert report and testimony of Dr. David Stewart should be excluded. *See* Dkt. No. 123.

(27)   The expert report and testimony of Dr. James Pomerantz should be excluded. *See* Dkt. No. 123.

(28)   Exxon should be precluded from introducing the anonymous blog posts attached to its Amended Complaint. *See* Dkt. No. 130.

(29)   Dr. Ravi Dhar should be permitted to testify concerning the content of his entire expert report, including the paragraphs challenged by Exxon. *See* Dkt. 146.

(30)   Stephanie Anderson should be permitted to testify concerning the content of her entire expert report, including the portions challenged by Exxon. *See* Dkt. 155.

(31)   Exxon's claim for trademark dilution under Texas law is barred in its entirety by Section 43(c)(6) of the Lanham Act, 15 U.S.C. § 1125(c)(6), because FX is the owner of two federal registrations of the FXX Mark in standard character form. *See* Dkt. Nos. 18, 36.

(32)   Because Exxon suffered no actual damages and is not entitled to damages (see Dkt. No. 129), Exxon is not entitled to a trial by jury. *See Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 121-22 (5th Cir. 1973); *Gauthreaux v. Baylor Univ. Med. Ctr.*, 876 F. Supp. 847, 848 (N.D. Tex. 1994); *Prescott v. Northlake Christian Sch.*, 141 F. App'x 263, 268-69 (5th Cir. 2005); *Tapp v. United States*, No. A 00 CA 668 SS, 2001 WL 587217, at *3 (W.D. Tex. Apr. 27, 2001).

## 10.   **EXHIBITS**

Exxon's Exhibit List is attached as **Attachment A-1**.

FX's Exhibit List is attached as **Attachment A-2**.

The parties will exchange trial exhibits on or before August 31, 2015 in accordance with  the Court's Order Regarding Trial Exhibits (**Dkt. No. 144**), and as to each exhibit list, the receiving party will notify the offering party of any exhibits requiring authentication within 7 days in accordance with Local Rule 44.1. The parties will make all other admissibility objections at least 7 days before trial by notifying the Court in writing of disputes in accordance with Local Rule 46.

The mere listing of an exhibit by a party on its exhibit list that forms part of the pretrial order does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer the exhibit into evidence.

## 11.   **WITNESSES**

Exxon's Witness List is attached as **Attachment B-1**.

FX's Witness List is attached as **Attachment B-2**.

Exxon's Expert Witness Qualifications List is attached as **Attachment C-1**.

FX's Expert Witness Qualifications List is attached as **Attachment C-2**.

**12.   <u>SETTLEMENT</u>**

The parties have engaged in settlement discussions. To date, those discussions have not resulted in settlement. This case cannot be settled and must be tried.

**13.   <u>TRIAL</u>**

### A.   <u>Probable Length of Trial</u>

The parties estimate that the length of the trial will be 10-14 trial days.

### B.   <u>Logistical Issues</u>

The parties' witness lists include numerous out-of-state fact and expert witnesses. To assist the Court in scheduling a trial with as few witness availability issues as possible, the parties have preliminarily conferred and determined that witnesses on both sides could be made generally available for a trial beginning October 13, 2015, subject to the Court's availability and convenience.

**14.   <u>ATTACHMENTS</u>**

In accordance with this Court's Procedures and the Local Rules, the following exhibits are attached:

**Attachment D-1 and D-2:**     Proposed Voir Dire Questions

**Attachment E-1 and E-2:**     Proposed Jury Instructions and Verdict Forms

**Attachment F-1 and F-2:**     Motions in Limine

**Attachment G-1:**                    Exxon's Pretrial Brief

Date:  _____          _____
                               **U.S. District Court Judge**


**Approved:**

*s/ David J. Beck*                    *s/ William H. Brewster*
David J. Beck, *Attorney in Charge*   William H. Brewster,* *Attorney in Charge*
Alex B. Roberts                       R. Charles Henn Jr.*
Michael E. Richardson                 Sabina A. Vayner*
Joel T. Towner                        Jessica A. Pratt*
BECK REDDEN LLP                       KILPATRICK TOWNSEND & STOCKTON LLP
1221 McKinney, Suite 4500             1100 Peachtree Street, Suite 2800
Houston, Texas 77010-2010            Atlanta, Georgia  30309-4528
Telephone:  (713) 951-3700            Telephone:  (404) 815-6500
Facsimile:  (713) 951-3720            Facsimile:  (404) 815-6555


Louis T. Pirkey                       Larry McFarland*
Stephen P. Meleen                     KILPATRICK TOWNSEND & STOCKTON LLP
Tyson D. Smith                        9720 Wilshire Boulevard PH
Alexandra H. Bistline                 Beverly Hills, California  90212-2018
PIRKEY BARBER PLLC                    Telephone:  (310) 777-3750
600 Congress Avenue, Suite 2120       Facsimile:  (310) 388-5917
Austin, Texas 78701                   *Admitted *pro hac vice*
Telephone:  (512) 322-5200
Facsimile:  (512) 322-5201            Paul L. Mitchell
                                      Brian C. Pidcock
*Attorneys for Plaintiff*             Joseph W. Golinkin II
                                      ANDREWS KURTH LLP
                                      600 Travis, Suite 4200
                                      Houston, Texas  77002
                                      Telephone:  (713) 220-3995
                                      Facsimile:  (713) 238-7246


                                      *Attorneys for Defendant*